IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

_____
)
IN RE REGIONS MORGAN KEEGAN        )           MDL Docket No. 2009
SECURITIES, DERIVATIVE and ERISA   )
LITIGATION                         )
                                   )
This Document Relates to:          )
                                   )
*Ryan v. Morgan Asset Management,* )
*Inc.*, No. 2:08-cv-02162-SMH-dvk  )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
MORGAN ASSET MANAGEMENT, INC., ALLEN B. MORGAN, JR.,
AND J. KENNETH ALDERMAN**

Michael L. Dagley
Matthew M. Curley
W. Brantley Phillips, Jr.
BASS, BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, TN 37238
(615) 742-6200

Shepherd D. Tate
Michael A. Brady
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, Tennessee   38103-3672
(901) 543-5900

*Attorneys for Morgan Asset Management, Inc.,
Allen B. Morgan, Jr., and J. Kenneth Alderman*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................3

I.   The Parties .................................................................................................................3

II.  Plaintiff's Substantive Allegations ..........................................................................3

III. Plaintiff's Demand Futility Allegations ...................................................................5

STANDARD OF REVIEW ...............................................................................................5

ARGUMENT .....................................................................................................................6

I.   Plaintiff has alleged no facts that would excuse demand on the directors under Maryland law
     .....................................................................................................................................6

     A.  The pleading standard required to show that demand is excused under Maryland
         law is exceptionally stringent........................................................................6

     B.  Maryland statutory law provides that directors who are "not interested" persons
         under the ICA are independent and disinterested for all purposes. ...................9

     C.  Plaintiff's allegations are insufficient to excuse demand under Maryland law. .................9

         1.  Alleged director liability is irrelevant under Maryland law........................10

         2.  The directors' receipt of remuneration and employment with related
             companies does not excuse demand. .........................................................11

         3.  Purported lack of insurance coverage does not excuse demand under
             Maryland law. ...........................................................................................12

II.  Plaintiff's Complaint sounds in fraud and fails to satisfy the heightened pleading
     requirements of Rule 9(b)......................................................................................13

     A.  The Pleading Requirements of Rule 9(b).........................................................13

     B.  Plaintiff's Complaint clearly sounds in fraud. ................................................14

     C.  Plaintiff has failed to plead alleged misrepresentations with requisite specificity ............16

III. Any non-fraud claims against Defendants fail as a matter of law. ...........................................18

    A.  The Advisory Agreement between the RHY Fund and MAM bars any non-fraud claims. ....................................................................................................................................18

    B.  Claims against the Directors are improper under the Fund's Articles of Incorporation. ...............................................................................................................................19

IV. Plaintiff improperly brings her § 11 claim against Defendant MAM. ....................................20

CONCLUSION ..........................................................................................................................21

# TABLE OF AUTHORITIES

## Cases

Ashcroft v. Iqbal,
    129 S.Ct. 1937 (2009) ........................................................................................... 17, 19

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ...................................................................................... 6, 17, 19

Bender v. Schwartz,
    917 A.2d 142 (Md. Ct. App. 2007) ..................................................................... 7

Champion Home Builders Co. v. ADT Sec. Servs., Inc.,
    179 F. Supp. 2d 16 (N.D.N.Y. 2001) .................................................................. 19

City of St. Clair Shores Gen. Empl. Ret. Sys. v. Inland W. Retail Real Estate Trust, Inc.,
    2009 WL 918364 (N.D. Ill. Apr. 1, 2009) ......................................................... 10

Coffey v. Foamex, L.P.,
    2 F.3d 157 (6th Cir. 1993) .................................................................................. 13

CompuSpa, Inc. v. I.B.M. Corp.,
    228 F. Supp. 2d 613 (D. Md. 2002) .................................................................... 19

Cozzarelli v. Inspire Pharm. Inc.,
    549 F.3d 618 (4th Cir. 2008) .............................................................................. 16

Danielewicz v. Arnold,
    769 A.2d 274 (Md. Ct. Spec. App. 2001) ........................................................... 8

Edge Parnters, L.P. v. Dockser,,
    944 F. Supp. 2d 438 (D. Md. 1996) ............................................................. 12, 13

Fink v. Komansky,
    2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) ...................................................... 8

Grill v. Hoblitzel,
    771 F. Supp. 709 (D. Md. 1991) ........................................................................ 13

Hoover v. Langston Equip. Assocs.,
    958 F.2d 742 (6th Cir. 1992) .............................................................................. 16

In re Abbott Labs. Deriv. S'holders Litig.,
    325 F.3d 795 (7th Cir. 2001) ............................................................................... 8

In re Brooks Automation, Inc. Sec. Litig.,
    2007 WL 4754051 (D. Mass. Nov. 6, 2007) ........................................................ 16

In re CNL Hotels & Resorts, Inc. Sec. Litig.,
    2005 WL 2219283 (M.D. Fla. Sept. 13, 2005) ...................................................... 11

In re Computer Scis. Corp. Deriv. Litig.,
    244 F.R.D. 580 (C.D. Cal. 2007) ........................................................................... 8

In re Daou Sys., Inc. Sec. Litig.,
    411 F.3d 1006 (9th Cir. 2005) ........................................................................ 14, 16

In re Ferro Corp. Deriv. Litig.,
    511 F.3d 611 (6th Cir. 2008) .............................................................. 6, 8, 11, 12

In re Franklin Mut. Funds Fee Litig.,
    388 F. Supp. 2d 451 (D.N.J. 2005) ................................................................. 7, 10, 12

In re Gen. Motors ERISA Litig.,
    2006 WL 897444 (E.D. Mich. Apr. 6, 2006) ....................................................... 16

In re InfoSonics Corp. Deriv. Litig.,
    2007 WL 2572276 (S.D. Cal. Sept. 4, 2007) ................................................. 7, 11, 12

In re Keithley Instruments Sec. Litig.,
    268 F. Supp. 2d 887 (N.D. Ohio 2002) ............................................................... 18

In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.,
    2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006) ...................................................... 12

In re Mut. Funds Invest. Litig.,
    384 F. Supp. 2d 873 (D. Md. 2005) ................................................................. 7, 9

In re OM Group Deriv. Litig.,
    No. 1:03CV0020 (N.D. Ohio July 11, 2003) ....................................................... 14

In re Prison Realty Sec. Litig.,
    117 F. Supp. 2d 681 (M.D. Tenn. 2000) ............................................................. 13

In re The Goodyear Tire & Rubber Co. Deriv. Litig.,
    2007 WL 43557 (N.D. Ohio Jan. 5, 2007) .................................................... 6, 13, 14

Jones ex rel. CSX Auto Corp. v. Jenkins,
    503 F. Supp. 2d 1325 (D. Ariz. 2007) ................................................................. 13

Kamen v. Kemper Fin. Servs., Inc.,
  500 U.S. 90 (1991) ................................................................................................ 1

Kreiger v. Gast,
  2000 WL 288442 (W.D. Mich. Jan 21, 2000) ...................................................... 16

Melder v. Morris,
  27 F.3d 1097 (5th Cir. 1994) ............................................................................... 15

Mulbarger v. Royal Alliance Assocs.,
  1999 WL 33432317 (S.D. Ohio Dec. 22, 1999) .............................................. 14, 17

NCR Corp. v. AT&T Co.,
  761 F. Supp. 475 (S.D. Ohio 1991) ..................................................................... 10

Parish v. Maryland & Virginia Milk Producers Ass'n,
  242 A.2d 512 (Md. 1968) ..................................................................................... 13

Perry v. Am. Tobacco Co., Inc.,
  324 F.3d 845 (6th Cir. 2003) ................................................................................. 5

Rombach v. Chang,
  355 F.3d 164 (2d Cir. 2004).................................................................................. 14

Ross v. Bernhard,
  396 U.S. 531 (1970)................................................................................................ 1

Rubke v. Capitol Banccorp Ltd.,
  460 F. Supp. 2d 1124 (N.D. Cal. 2006) ................................................................ 16

Scalisi v. Fund Asset Mgmt., L.P.,
  380 F.3d 133 (2d Cir. 2004)........................................................................... 6, 9, 12

Scraggs v. La Petite Academy, Inc.,
  2006 WL 2711689 (E.D. Tenn. Sept. 21, 2006) .................................................... 13

Sekuk Global Servs. Enters. Profit Sharing Plan v. Kevenides,
  2004 WL 1982508 (Md. Cir. Ct. Baltimore City May 25, 2004)........................... 12

Shapiro v. UJB Fin. Corp.,
  964 F.2d 272 (3d Cir. 1992)................................................................................... 16

Taylor v. Standard Ins. Co.,
  2009 WL 113457 (W.D. Tenn. Jan. 13, 2009) ...................................................... 17

Trumball Inv., Ltd. v. Wachovia Bank, N.A.,
    2005 WL 6148880 (E.D. Va. Apr. 15, 2005) ........................................ 19

Werbowsky v. Collomb,
    766 A.2d 123 (Md. 2001) .............................. 1, 5 6, 7, 8, 9, 10, 11, 12

Wolf v. Ford,
    644 A.2d 522 (Md. 1994) ................................................................... 18

Zimmerman v. Bell,
    585 F. Supp. 512 (D. Md. 1984) ........................................................ 13

**Federal Statutes**

15 U.S.C. § 77k(a) ..................................................................................... 20

15 U.S.C. § 78u-4(b) ................................................................................. 14

15 U.S.C. § 80(a)-17(h) ............................................................................. 20

15 U.S.C. § 80(a)-2 ...................................................................................... 9

15 U.S.C. § 80a-5 ..................................................................................... 4, 9

15 U.S.C. § 80a-17(i) ................................................................................. 18

**State Statutes**

Md. Code Ann. Corps. & Ass'ns § 2-405.2 ............................................... 20

Md. Code Ann. Corps. & Ass'ns § 2-405.3 ............................................. 2, 9

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................. 5

Fed. R. Civ. P. 12(c) ................................................................................... 5

Fed. R. Civ. P. 23.1(b)(3) ........................................................................... 6

Fed. R. Civ. P. 9(b) ............................................................................. *passim*

Morgan Asset Management, Inc. ("MAM"), Allen B. Morgan, Jr., and J. Kenneth Alderman respectfully submit this memorandum of law in support of their motion to dismiss this derivative action.[1]

## PRELIMINARY STATEMENT

Plaintiff Rebecca Ryan is a minority shareholder of the Regions Morgan Keegan Multi-Sector High Income Fund, Inc. (the "RHY Fund," or the "Fund").  Plaintiff proposes to bring this action derivatively on behalf of the Fund, an investment company organized under the laws of Maryland, seeking to recover damages allegedly sustained by the Fund as a result of the alleged wrongdoing by the defendants named in this action.  In doing so, however, Plaintiff inappropriately seeks to usurp rights and powers lawfully reserved to the RHY Fund's directors.

As the United States Supreme Court has stated unequivocally, the decision and power to bring litigation on behalf of a corporation is reserved to the business judgment of the corporation's directors.  See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 101 (1991).  As such, a shareholder may only proceed with a derivative suit after demonstrating that "the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions."  Id. at 96 (quoting Ross v. Bernhard, 396 U.S. 531, 534 (1970)).  Maryland law is to the same effect.  Demand on the board is required except for the rare situation in which demand would be futile.  Moreover, under both Maryland law and Rule 23.1 of the Federal Rules of Civil Procedure, Plaintiff bears the heavy burden of establishing demand futility through "very particular" allegations or evidence.  See Werbowsky v. Collomb, 766 A.2d 123, 144 (Md. 2001); see also Fed. R. Civ. P. 23.1.

Here, Plaintiff has made no demand on the corporation and the allegations in Plaintiff's Complaint fall woefully short of showing that demand is excused.  The Complaint is unverified and provides only conclusory allegations of demand futility with little to no supporting facts.  Even

---

[1]      MAM and Messrs. Morgan and Alderman incorporate the arguments in the motions to dismiss filed by the RHY Fund's Independent Directors.

assuming the allegations are well-pleaded, which they are not, Plaintiff merely regurgitates arguments that repeatedly have been rejected by courts applying Maryland law.  Plaintiff's allegations boil down to nothing more than a generalized assertion that all of the Fund's directors are "interested" and "not independent" for purposes of considering demand.

Plaintiff also conveniently ignores that Maryland law expressly provides that any director deemed "independent" for purposes of the Investment Company Act of 1940 (the "ICA") is also "deemed to be independent and disinterested when *making any determination or taking any action as a director*," including considering demand.  See Md. Code Ann. Corps. & Ass'ns § 2-405.3 (emphasis supplied).  Because the Fund was at all times in compliance with the ICA provisions requiring a majority of independent directors (and the Complaint contains no allegations to the contrary), Plaintiff is incapable of establishing that demand on these directors would be futile.

The Court alternatively must dismiss Plaintiff's Complaint because she has failed to plead the substantive allegations with the requisite particularity.  Plaintiff repeatedly alleges fraudulent misconduct by the Defendants, and incorporates her allegations of fraud into each of her claims for relief.  Where Plaintiff bases non-fraud causes of action on a common course of conduct grounded in fraud the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure apply.  Plaintiff has not met these standards, and the Court should dismiss her Complaint.

Finally, should it be determined that Plaintiff has pleaded a non-fraud cause of action, those claims fail as a matter of law.  Any claims against MAM are barred by the exculpatory provision contained in the Advisory Agreement between MAM and the RHY Fund, and MAM is not a proper defendant to a claim under § 11 of the Securities Act of 1933 (the "1933 Act").  Likewise, Plaintiff's claims against the directors fail due to the exculpatory provision contained in the Fund's Articles of Incorporation.

2

## STATEMENT OF FACTS

### I.      The Parties

Plaintiff Rebecca Ryan purports to be a current shareholder of the RHY Fund, on behalf of which she seeks to bring this derivative action.  (Compl. ¶ 3.)  The RHY Fund is a closed-end investment management company organized under the laws of the state of Maryland and pursuant to the ICA.

MAM is a registered investment adviser that managed and advised the RHY Fund until July 29, 2008.  On that date, Hyperion Brookfield Asset Management, Inc., assumed the role of investment advisor to the Funds.  See Declaration of Matthew M. Curley ("Curley Dec."), Ex. 1 (RMK Multi-Sector High Income Fund, Inc., Semi-Annual Rept. at 1 (Sept. 30, 2008)).

The remaining defendants are the Fund's eight former directors: Allen B. Morgan, Jr., J. Kenneth Alderman, Jack R. Blair, Albert C. Johnson, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, and Archie Willis, III.  (Compl. ¶¶ 6-13.)  Directors Blair, Johnson, McFadden, Pittman, Stone and Willis were considered independent or "not interested" directors within the meaning of the ICA.  At all times relevant to this action, an overview of the directors' backgrounds was included in the Funds' public filings.  See, e.g., Curley Dec., Ex. 2 (RMK Multi-Sector High Income Fund, Inc., Semi-Annual Rept. at 92-94 (Sept, 30, 2007)).

Messrs. Morgan and Blair had retired from the board effective December 31, 2007.  See id., Ex. 3 (RMK Multi-Sector High Income Fund, Inc., Annual Rept. at 97-99 (Mar. 31, 2008) ("RHY Annual Rept. (Mar. 2008)").  As such, at the time Plaintiff commenced this action, five of the Fund's six directors were outside directors and considered disinterested under the ICA.  Id.

### II.     Plaintiff's Substantive Allegations

Closed-end investment companies, such as the RHY Fund, do not continuously offer and redeem new securities; rather, the Fund's shares are traded on the secondary market after an initial

public offering with share price dictated by market forces.  As such, a closed-end investment management company is like an ordinary corporation as shareholders do not have redemption rights as they would with an investment in a mutual fund.  <u>See</u> 15 U.S.C. § 80a-5.

The RHY Fund sought to achieve its investment objectives primarily through investments in below investment grade securities, commonly known as "junk bonds."  To this end, the Fund's offering documents make clear that the Fund anticipated investing ***at least*** 50% of its assets in below investment grade debt securities and that the Fund may invest up to 20% of its assets in distressed securities.  <u>See</u> Curley Dec., Ex. 4 (RMK Multi-Sector High Income Fund, Inc., Prosp. at 16 (Jan. 19, 2006)).  Shares of the Fund were initially offered at $15.00 per share and traded at or near that level until March 2007.  In mid-2007, however, the Fund began to experience significant losses as a result of declines in the global credit markets.

Plaintiff filed this action on behalf of the RHY Fund, alleging that Defendants: (i) mismanaged the Fund by investing in ill-advised and illiquid assets; (ii) fraudulently failed to disclose the risks associated with an investment in the Fund; (iii) failed to properly value the assets held by the Fund; and/or (iv) impermissibly concentrated the Fund's assets in certain industries and types of investments.  (Compl. ¶¶ 64 <u>et</u> <u>seq.</u>)  The merits of Plaintiff's substantive claims are, of course, not the focus of the present motion.  The issues before the Court are: (i) whether Plaintiff may bring this derivative action despite her failure to make any demand on the board of directors and when she has failed to allege any basis that would excuse them from such a demand under Maryland law; (ii) whether Plaintiff has pleaded her allegations with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure; and (iii) whether Plaintiff's claims are otherwise barred as a matter of law.

III.   **Plaintiff's Demand Futility Allegations**

Maryland law requires that a plaintiff make a demand upon the directors of a corporation prior to pursuing derivative claims.  See Werbowsky 766 A.2d at 144.  Plaintiff here contends that her obligation to make demand should be excused as futile based on a series of conclusory allegations that courts have consistently rejected as insufficient to excuse demand.

Plaintiff's demand allegations are set forth in ¶¶ 50-61 of the Complaint.  Plaintiff contends that demand is futile because: the Fund's directors are "interested personally in the outcome" of any litigation because they "participated in, approved and/or permitted the wrongs alleged," (id. ¶¶ 52-53); the Fund's directors "acquiesce[d]" to improper conduct on behalf of the Fund's manager, (id. ¶ 54); the directors' alleged conduct would "likely expose" them to civil liability, (id. ¶ 57); the directors could not act independently because a demand would "force[] [them] to sue themselves and persons with whom they have extensive business and personal entanglements," (id. ¶ 55); the directors of the Fund are "recipient[s] of remuneration paid by the Fund" and are "present or former employees of the Fund's parent and sister companies," (id. ¶ 60); and the directors would not institute suit on behalf of the Fund because their insurance policies contain an "insured versus insured exclusion" that would preclude coverage for the individual directors, (id. ¶ 61).  Each of Plaintiff's individual allegations is discussed below; however, none provides a basis to excuse demand in this case.

**STANDARD OF REVIEW**

Rule 12 of the Federal Rule of Civil Procedure provides for dismissal of a complaint where the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.  See Fed. R. Civ. P. 12(b)(6) & 12(c).  While the court must construe the complaint in favor of the plaintiff, the court "need not accept as true 'legal conclusions or unwarranted factual inferences.'"  See Perry v. Am. Tobacco Co., Inc., 324 F.3d 845, 848 (6th Cir. 2003) (quoting Morgan v.

5

Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)). Therefore, Plaintiff must provide more than "labels and conclusions," and must plead facts sufficient "to raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

When a plaintiff in a derivative action alleges demand futility, such allegations must be pleaded "in a ***very particular*** manner." See Werbowsky, 766 A.2d at 144. Rule 23.1 of the Federal Rules of Civil Procedure requires that Plaintiff "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."[2]  Fed. R. Civ. P. 23.1(b)(3). Furthermore, where Plaintiff has alleged fraudulent conduct, the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure apply.

## ARGUMENT

**I.      Plaintiff has alleged no facts that would excuse demand on the directors under Maryland law.**

      **A.      The pleading standard required to show that demand is excused under Maryland law is exceptionally stringent.**

The RHY Fund is a Maryland corporation, and therefore, Maryland law governs the substantive analysis of whether a shareholder is permitted to proceed with claims derivatively. Kamen, 500 U.S. at 108-109 (recognizing that a court considering a derivative action "must apply the demand futility exception as it is defined by the law of the State of incorporation"). Under Maryland law, the "power to institute litigation and the control of any litigation to which [a] corporation becomes a party rests with the directors." Werbowsky, 766 A.2d at 133. As such, it is

---

[2]      Given this pleading standard, courts have routinely dismissed derivative complaints when such complaints fail to plead demand or demand futility with the requisite particularity.  See, e.g., In re Ferro Corp. Deriv. Litig., 511 F.3d 611, 617 (6th Cir. 2008) (upholding the dismissal of a complaint for failure to plead demand futility with particularity); Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133 (2d Cir. 2004) (same); In re The Goodyear Tire & Rubber Co. Deriv. Litig., 2007 WL 43557 (N.D. Ohio Jan. 5, 2007) (same).

an "extraordinary" remedy for a shareholder to exercise the corporate powers derivatively, and she may not do so unless demand is excused.  Kamen, 500 U.S. at 96.

To bring suit derivatively on behalf of a Maryland corporation, a shareholder "must either make a demand on the board of directors that the corporation bring the suit, or show that demand is excused as futile." Bender v. Schwartz, 917 A.2d 142, 152 (Md. Ct. App. 2007); Werbowsky, 766 A.2d at 145 ("[B]efore commencing a derivative action, a shareholder must 'allege and *prove*' that he, she, or it requested the directors to sue in the name of the corporation.") (emphasis in original). Given the extraordinary nature of a derivative suit, this standard is particularly stringent and demand is rarely excused under Maryland law.  See In re Mut. Funds Invest. Litig., 384 F. Supp. 2d 873, 877 n.7 (D. Md. 2005) ("The law of Maryland . . . is perhaps even more restrictive than the law of Delaware and Massachusetts"); In re InfoSonics Corp. Deriv. Litig., 2007 WL 2572276, *7 (S.D. Cal. Sept. 4, 2007) ("Delaware's requirements for demand futility are more permissive than Maryland's, requiring only that the facts alleged create a 'reasonable doubt' that the directors are disinterested and independent.").

Having failed to make demand on the RHY Fund's board of directors, Plaintiff instead alleges that demand on the directors would be futile.  Under Maryland law, to plead demand as futile, a plaintiff must clearly demonstrate either: (i) imminent harm to the corporation in the event of a delay in bringing suit, or (ii) that a majority of the corporation's directors would not respond to their request "in good faith and within the ambit of the business judgment rule."  Werbowsky, 766 A.2d at 144.  This requirement "focuses the court's attention on the real, limited issue – the futility of a pre-suit demand – and avoids injecting into a preliminary proceeding issues that go more to the merits of the complaint . . . ."  Id.

Demand is both a pleading requirement and a substantive prerequisite to a derivative suit. See In re Franklin Mut. Funds Fee Litig., 388 F. Supp. 2d 451, 469 (D.N.J. 2005) (citing Kamen,

7

500 U.S. at 96). As such, the substantive requirements must be stated with particularity under Rule 23.1 of the Federal Rules of Civil Procedure. See Kamen, 500 U.S. at 96; see also In re Ferro Corp. Deriv. Litig., 511 F.3d at 617. In this regard, "the futility exception pertaining to a demand upon a corporation's directors to sue should not be lightly accepted without the presentation of sufficient evidence, in a very particular manner, that demonstrates the alleged futility of such a demand." Danielewicz v. Arnold, 769 A.2d 274, 292 (Md. Ct. Spec. App. 2001); see also Werbowsky, 766 A.2d at 144 (noting that futility allegations must be pleaded in a "very particular manner").

"[C]onclusionary allegations of fact or law not substantiated with specific facts are insufficient to support demand futility." Fink v. Komansky, 2004 WL 2813166, *4 (S.D.N.Y. Dec. 8, 2004); see also In re Ferro Corp. Deriv. Litig., 511 F.3d at 618 ("Broad, generalized and conditional statements [as to demand futility] do not constitute facts pleaded with particularity.") (quotations and citations omitted); In re Abbott Labs. Deriv. S'holders Litig., 325 F.3d 795, 803-804 (7th Cir. 2001) (same). And, "[a] derivative plaintiff cannot show demand futility merely by generally alleging that a majority of the directors participated in wrongful acts." In re Computer Scis. Corp. Deriv. Litig., 244 F.R.D. 580, 589 (C.D. Cal. 2007), aff'd sub nom. Laborers Int'l Union of N. Am. v. Bailey, 310 Fed. Appx. 128 (9th Cir. 2009).

Here, Plaintiff's allegations do not come close to meeting the standard set forth in Werbowsky. Indeed, Plaintiff makes no attempt to show that demand should be excused due to the threat of imminent harm and otherwise offers no facts to suggest that the directors are conflicted and incapable of considering a demand. In fact, each of the allegations regarding demand futility contained in Plaintiff's Complaint has been specifically rejected as a basis for alleging demand futility under Maryland law.

**B.      Maryland statutory law provides that directors who are "not interested" persons under the ICA are independent and disinterested for all purposes.**

Maryland statutory law provides that a director of an ICA-registered investment company is "independent" if that director is not an "interested person" within the meaning of the ICA, as defined by 15 U.S.C. § 80a-2.  Section 2-405.3 of the Maryland Code applies specifically to Maryland corporations registered as investment companies and states that "[a] director of a corporation [that is a registered investment company] who with respect to the corporation is not an interested person, as defined by the [ICA], shall be deemed to be independent and disinterested when making any determination or taking any action as a director."  Md. Code Ann. Corps. & Ass'ns § 2-405.3(b).  This provision applies in making the determination of whether a director is independent and capable of considering demand in the demand futility context.  See In re Mut. Funds Invest. Litig., 384 F. Supp. 2d at 878-89 (D. Md. 2005).[3]  At the time Plaintiff commenced this action, the Fund's Board of Directors was comprised of six directors, five of whom were "not interested" within the meaning of the ICA.  As a matter of law, therefore, a majority of the Fund's Board of Directors was independent and, accordingly, demand cannot be excused.

**C.      Plaintiff's allegations are insufficient to excuse demand under Maryland law.**

Under Werbowsky, Plaintiff bears the heavy burden of proving that a majority of the directors "are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule."  Werbowsky, 776 A.2d at 144.  Here, there can be no dispute that all but one of the Fund's directors were disinterested and independent under the ICA and Maryland law at the time Plaintiff commenced this action.  This dooms Plaintiff's futility argument from the outset.

---

[3]      Importantly, an interested director under the ICA does not automatically fail the test for independence under Maryland law.  See Scalisi, 380 F.3d at 140 ("Although § 2-405.3 classifies as 'independent' a director who is not 'interested' under the ICA, this by no means suggests that every person who is 'interested' under the ICA should be found to fail Maryland's test for independence.").

9

Nonetheless, Plaintiff otherwise has failed to plead facts sufficient to demonstrate that the directors "cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." <u>Id.</u>   This burden is exceedingly heavy where, as here, it is undisputed that a majority of the directors were independent, both as independent, outside directors and as "disinterested persons" under the ICA.  Indeed, under Maryland law, "'the business judgment rule creates the presumption that directors act in good faith,'" a presumption that is heightened, "where, as here, the majority of the Board members are independent outside directors." <u>NCR Corp. v. AT&T Co.</u>, 761 F. Supp. 475, 490 (S.D. Ohio 1991) (quoting <u>Zimmerman v. Bell</u>, 800 F.2d 386, 392 (4th Cir. 1986)).

In support of the argument that demand is excused, Plaintiff relies upon a series of arguments nearly identical to those rejected in <u>Werbowsky</u>.  Such arguments should be rejected here as well.

**1.      Alleged director liability is irrelevant under Maryland law.**

Plaintiff alleges that demand should be excused because of the directors' potential liability in this action and other pending lawsuits.  Specifically, Plaintiff claims that demand should be excused because the directors are "interested personally in the outcome," having allegedly "played a part in subjecting the [Fund] to . . . liability,"  and/or "acquiesce[d]" to improper conduct on behalf of the Fund's manager, and that this conduct would "likely expose" the directors to further civil liability and "force [them] to sue themselves and persons with whom they have extensive business and personal entanglements."  (Compl. ¶¶ 54-59.)

These allegations are insufficient to excuse demand under Maryland law.  Courts have long held that "[m]ere approval of the challenged transactions . . . is not enough to excuse the failure to make a demand." <u>In re Franklin Mut. Funds Fee Litig.</u>, 388 F. Supp. 2d 451, 470 (D.N.J. 2005) (citing <u>Werbowsky</u>, 766 A.2d at 143-44); <u>see also</u> <u>City of St. Clair Shores Gen. Empl. Ret. Sys. v.</u>

10

Inland W. Retail Real Estate Trust, Inc., 2009 WL 918364, *11 (N.D. Ill. Apr. 1, 2009) (same); In re CNL Hotels & Resorts, Inc. Sec. Litig., 2005 WL 2219283, *4-5 n.18 (M.D. Fla. Sept. 13, 2005) (same).  And, demand is not futile merely because the proposed litigation might expose directors to liability.

In In re Infosonics Corp. Deriv. Litig., the district court applied Werbowsky and explicitly rejected a nearly identical set of allegations as excusing demand under Maryland law, stating that "[i]f 'likelihood of liability' is based on the allegations of the Complaint, all well-pled complaints would be able to establish demand futility."  2007 WL 2572276, at *7.  The "futility exception" urged by Plaintiff would "eviscerate the demand requirement," id. at *8, and "inject[] into a preliminary proceeding issues that go more to the merits of the complaint," Werbowsky, 766 A.2d at 144; see also id. at 145 (noting that the issue of futility is discrete and does not go to the merits of the underlying complaint).[4]

### 2. The directors' receipt of remuneration and employment with related companies does not excuse demand.

Plaintiff also alleges that demand would be futile because the directors of the Fund are "recipient[s] of remuneration paid by the Fund" and are "present or former employees of the Fund's parent and sister companies."[5]  (Compl. ¶ 60.)  Such arguments likewise have been rejected under Maryland law.  For example, "allegations that the directors were chosen by the investment advisers,

---

[4]      In any event, as set forth infra in Part III.B, Plaintiff has failed to allege any potential director liability, and her claims fail as a matter of law.  See In re Ferro Corp. Deriv. Litig., 511 F.3d at 619 (applying Ohio law and rejecting plaintiffs' conclusory assertions that "a pre-suit demand would have been futile because the directors do not want to sue themselves or expose themselves to liability," and noting that a "'bare allegation that the directors would not want to sue themselves or each other does not show that demand would be futile'") (citation omitted).

[5]      Plaintiff also makes the erroneous assertion that MAM and the Fund "share the same corporate parent," and that "all of the directors of RHY Fund would be forced to sue themselves and persons with whom they have extensive business and personal entanglements…"  (Compl. ¶¶ 55, 60.)  The Fund is a separate publicly traded company, and is not a subsidiary of Regions, MK Holding, or any other company. (Id. ¶ 26.)

sat on multiple boards and received substantial compensation are, by themselves, ***insufficient to demonstrate that the directors are interested***" and that demand is futile.  In re Franklin Mut. Funds Fee Litig., 388 F. Supp. 2d at 470 (emphasis supplied) (citing Werbowsky, 766 A.2d at 145-46); In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig., 2006 WL 1008138, *13 (S.D.N.Y. Apr. 18, 2006) (holding that "compensation and employment arrangements are not sufficient to show that a board member is interested or conflicted"); Scalisi, 380 F.3d at 140 (rejecting plaintiffs' argument that the demand on the directors of a mutual fund was futile because the "directors were appointed by [the parent corporation]," and "they had a powerful self-interest not to authorize a suit by [the Fund] against a [parent-controlled entity] for fear they would lose their highly remunerative positions" on the board of forty-nine funds managed by the parent).  These arguments should be rejected here as well.

### 3. Purported lack of insurance coverage does not excuse demand under Maryland law.

Finally, Plaintiff alleges that demand should be excused because the directors' insurance policies allegedly contain an "insured versus insured exclusion" which would "eliminate coverage for any action brought directly by [the Fund] against these Defendants."  (Compl. ¶ 61.)  Courts likewise have rejected this theory as supporting demand futility under Maryland law.  See In re InfoSonics Corp. Sec. Litig., 2007 WL 2572276, at *7 n.1 ("[T]his Court concludes that when it does directly address the issue, the [Maryland] Court of Appeals will most likely follow the lead of other courts which have held that an insured-versus-insured provision does not excuse a pre-suit demand." (quoting Sekuk Global Servs. Enters. Profit Sharing Plan v. Kevenides, 2004 WL 1982508, *5 (Md. Cir. Ct. Baltimore City May 25, 2004)); see also Werbowsky, 766 A.2d at 129, 144 (declining to review the trial court's rejections of "the notion, drawn from Edge Partners, L.P. v. Dockser, 944 F. Supp. 438 (D. Md. 1996), that a lack of insurance coverage for named directors can excuse a demand"); In re Ferro Corp. Deriv. Litig., 511 F.3d at 622 (refusing to find demand

futile and observing that "several state and federal courts have rejected the idea that insured-versus-insured exclusions excuse a demand," also noting that this argument "was just another variation of the 'demand is futile because the directors would not want to sue themselves argument'") (citations omitted); Jones ex rel. CSX Auto Corp. v. Jenkins, 503 F. Supp. 2d 1325, 1341 (D. Ariz. 2007) ("Courts have routinely rejected this argument."); In re The Goodyear Tire & Rubber Co. Deriv. Litig., 2007 WL 43557, at *6 (same).  Any alleged lack of insurance coverage for the directors, therefore, does not excuse Plaintiff's failure to make a demand.[6]

## II.    Plaintiff's Complaint sounds in fraud and fails to satisfy the heightened pleading requirements of Rule 9(b).

While Plaintiff does not bring an action for fraud, she expressly alleges fraudulent conduct on the part of Defendants in support of each of her claims for relief.  The Complaint is replete with conclusory allegations of securities fraud and intentional misrepresentations and as such, Plaintiff must meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure with respect to her claims.

### A.    The Pleading Requirements of Rule 9(b)

Rule 9(b) requires that all averments of fraud or mistake be pleaded with particularity.  A plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  Coffey v. Foamex, L.P., 2 F.3d 157, 161-62 (6th Cir. 1993); see also Scraggs v. La Petite Academy, Inc., 2006 WL 2711689, *3 (E.D. Tenn. Sept. 21, 2006) (same); In re Prison Realty Sec. Litig., 117 F. Supp. 2d 681, 686 (M.D. Tenn. 2000).

---

[6]    In addition to failing to establish demand futility with respect to the directors, Plaintiffs have failed to make demand on the shareholders at large as required under Maryland law.  See Parish v. Maryland & Virginia Milk Producers Ass'n, 242 A.2d 512, 544 (Md. 1968) (citing Eisler v. E. States Corp., 35 A.2d 118, 119 (Md. 1943)); see also Edge Partners, L.P. v. Dockser, 944 F. Supp. 438, 442 (D. Md. 1996) (noting requirement of pre-suit demand on shareholders under Maryland law); Grill v. Hoblitzel, 771 F. Supp. 709, 712 n.5 (D. Md. 1991); Zimmerman v. Bell, 585 F. Supp. 512, 516 (D. Md. 1984).  This failure constitutes a separate ground for dismissal.

The requirements of Rule 9(b) apply even where a particular cause of action itself does not require a plaintiff to plead fraud.  A plaintiff implicates Rule 9(b) where the complaint "sounds in fraud" or where the plaintiff alleges "'a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim.'"  In re Daou Sys., Inc. Sec. Litig., 411 F.3d 1006, 1027 (9th Cir. 2005) (quoting Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003)).  Where, as here, a plaintiff brings claims based on a course of action expressly sounding in fraud, her complaint must be pleaded in compliance with Rule 9(b).  See Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004) (applying Rule 9(b) to claims under §§ 11 and 12(a)(2) of the 1933 Act "insofar as the claims are premised on allegations of fraud"); In re The Goodyear Tire & Rubber Co. Deriv. Litig., 2007 WL 43557, at *10 (dismissing derivative action where the "allegations sound in securities fraud and are not pleaded with the particularity required by Fed. R. Civ. P. 9(b), let alone the heightened standard of the PSLRA"); Mulbarger v. Royal Alliance Assocs., 1999 WL 33432317, *2 (S.D. Ohio Dec. 22, 1999) (applying Rule 9(b) to claims for negligent misrepresentation and breach of fiduciary duty predicated upon fraud), aff'd 10 Fed. Appx. 333 (6th Cir. 2001).[7]

### B.    Plaintiff's Complaint clearly sounds in fraud.

In the present case, conclusory allegations of fraud permeate the Complaint.  Plaintiff alleges a common course of conduct, in which she contends that Defendants conspired to misstate and conceal, from both federal regulators and the investing public, the true nature of the Fund's

---

[7]    In addition, Plaintiff's claims sound in securities fraud, in that they depend upon the resolution of issues arising under the Securities and Exchange Act of 1934 and federal law, and are therefore subject to the even higher pleading requirements of the Private Securities Litigation Reform Act.  See In re The Goodyear Tire & Rubber Co. Deriv. Litig., 2007 WL 43557, at *10-11; see also In re OM Group Deriv. Litig., No. 1:03 CV 0020 (slip opinion) (N.D. Ohio July 11, 2003) (holding that claims in a derivative action were based on conduct subject to the pleading requirements of Rule 9(b) and the PSLRA).  To meet the requirements of the PSLRA, a plaintiff must plead their allegations with particularity and adequately plead the requisite level of scienter.  15 U.S.C. § 78u-4(b)(1)-(2).

investment portfolio and the Fund's exposure to subprime securities, and expressly incorporates these allegations into each of her five causes of action:

- "During all relevant times hereto, each of the Individual Defendants occupied positions with RHY Fund or were associated with the Fund in such a manner as to make them privy to confidential and proprietary information concerning the Fund.  Because of these positions and such access, each of the Individual Defendants *knew that adverse facts specified herein had not been disclosed to and were concealed from the public*." (Compl. ¶ 22 (emphasis supplied).)

- "During all relevant times hereto, the Individual Defendants *initiated a course of conduct that was designed to and did*:  (i) *cause RHY Fund to misrepresent* the true nature of its investment portfolio and its exposure to subprime securities … (iii) *deceive the investing public, including Plaintiff and the other shareholders of RHY Fund*, regarding Defendants' management of RHY Fund's financial conditions; and (iv) *artificially inflate* the market price of RHY Fund securities during all relevant times.  *In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants, and each of them, took the actions as herein set forth.*" (Id. at ¶ 24 (emphasis supplied).)

-  "During the Class Period, Defendants represented repeatedly that the Company's financial statements were prepared in conformity with GAAP.  *These representations were materially false and misleading when made because Defendants, in violation of GAAP, knowingly or recklessly employed improper accounting practices, which falsely inflated the Fund's assets reported on the balance sheet.*"  (Id. at ¶ 37 (emphasis supplied).)

(See also id. ¶¶ 41, 53.)

In addition to the foregoing allegations in the body of the Complaint, Plaintiff's causes of action include additional allegations of deliberate misconduct.  (See, e.g., Count I (Breach of Fiduciary Duty), ¶ 66 (alleging deliberate misconduct on the part of the directors); Count III (Gross Mismanagement), ¶ 79 (alleging that the directors deliberately abandoned their obligations in managing the Fund); Count V (Unjust Enrichment and Waste), ¶ 87 (alleging that the directors have subjected the Company to liability for "securities fraud").)  And, each of Plaintiff's causes of action incorporates "each and every allegation contained above, as though fully set forth herein."  (See, e.g., id. at ¶¶ 70, 82.)  Because the Complaint is replete with allegations of fraudulent misconduct, each and every count sounds in fraud.  See Melder v. Morris, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994) (holding that a "complaint's wholesale adoption of [fraud] allegations" under non-fraud

claims for relief subjects a complaint to the requirements of Rule 9(b)); <u>Rubke v. Capitol Banccorp Ltd.</u>, 460 F. Supp. 2d 1124, 1135 (N.D. Cal. 2006) (same, where complaint "'fully incorporates all allegations previously averred in the complaint for purposes of all [plaintiff's] claims'") (quoting <u>In re Daou Sys., Inc.</u>, 411 F.3d at 1027), <u>aff'd</u> 551 F.3d 1156 (9th Cir. 2009).[8]

**C.    Plaintiff has failed to plead alleged misrepresentations with requisite specificity.**

All of Plaintiff's claims are based upon purported misrepresentations contained in the Fund's "Registration Statements and Prospectuses" (Compl. ¶ 35), "publicly reported financial statements," and "the various public statements issued by the Fund" (<u>id.</u> at ¶ 19). To satisfy Rule 9(b)'s particularity requirement, however, Plaintiff must plead the time, place, and content of each alleged misrepresentation, as well as the fraudulent scheme, the defendants' intent, and her own injury. Here, Plaintiff's allegations fail straightaway, as she does not plead the time, place and content of any of the alleged misrepresentations at all, much less specifically. <u>See</u>, <u>e.g.</u>, <u>Cozzarelli v. Inspire Pharm. Inc.</u>, 549 F.3d 618, 629 (4th Cir. 2008) (upholding dismissal of plaintiffs' complaint under Rule 9(b) where "plaintiffs have not explained with the necessary particularity why the statements that they cite in the prospectuses were false or misleading").

Defendants are aware of no case in which a court has held a complaint adequate under Rule 9(b), where the plaintiff fails to specify a single document or statement containing an alleged misrepresentation or omission. <u>See</u>, <u>e.g.</u>, <u>Hoover v. Langston Equip. Assocs.</u>, 958 F.2d 742, 745

---

[8]      Plaintiffs' Complaint also repeatedly alleges "wrongful," "knowing," and "intentional" misrepresentations designed to "deceive," "conceal the truth," and "artificially inflate" the Fund's share price. These words are "classically fraud language." <u>In re Brooks Automation, Inc. Sec. Litig.</u>, 2007 WL 4754051, *14 (D. Mass. Nov. 6, 2007). Such allegations are more than enough to bring the Complaint within the ambit of Rule 9(b). <u>See</u> <u>Shapiro v. UJB Fin. Corp.</u>, 964 F.2d 272, 288 (3d Cir. 1992) (holding that Rule 9(b) applies to a § 11 claim where the Complaint "brims with references to defendants' intentional and reckless misrepresentation of material facts"); <u>In re Gen. Motors ERISA Litig.</u>, 2006 WL 897444, *14 (E.D. Mich. Apr. 6, 2006) (applying Rule 9(b) to breach of fiduciary duty claims where Plaintiff alleges that Defendants intentionally made "material misrepresentations" and "conveyed inaccurate information"); <u>Krieger v. Gast</u>, 2000 WL 288442, *7 (W.D. Mich. Jan. 21, 2000) (applying Rule 9(b) to claims for conspiracy and breach of fiduciary duty grounded in an alleged "Wrongful Plan" intended to defraud).

16

(6th Cir. 1992) (affirming dismissal of a complaint where "plaintiffs had not alleged with specificity who had made particular misrepresentations and when they were made but rather had articulated general averments of fraud attributed to the 'defendants'"); Taylor v. Standard Ins. Co., 2009 WL 113457, *4 (W.D. Tenn. Jan. 13, 2009) (dismissing complaint where plaintiff "fails to allege when each misrepresentation occurred, the substance of each misrepresentation, the method of communication of each misrepresentation, and the specific content of each alleged misrepresentation"); Mulbarger, 1999 WL 33432317, at *2 ("A plaintiff cannot satisfy the pleading requirements of Rule 9(b) by attaching documents to the complaint without specifying with particularity the representations contained within the documents.").

Rather than specify which of the Fund's public statements and/or filings are allegedly misleading – not to mention which parts – Plaintiff relies exclusively upon a "laundry list" pleading of numerous fiduciary duties and GAAP provisions Defendants allegedly breached. (Compl. ¶¶ 37-46.)  The Complaint contains no indication as to which specific actions by which Defendants constituted breaches of fiduciary duty, and there is no indication as to which financial statements and public filings reflected non-GAAP-compliant accounting, much less the *effect* of the alleged GAAP violations on the financial statements.  These allegations are nothing more than conclusory statements of law unsupported by any facts, and are entirely insufficient to satisfy the requirements of Rule 9(b).

The Complaint's allegations do not suffice to meet even the basic Rule 8(a) pleading requirements, see, e.g., Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (rejecting allegations regarding Defendants' state of mind that amounted to nothing more than "'bare assertions'" or a "'formulaic recitation of the elements'" of a cause of action (quoting Twombly, 550 U.S. at 555)), much less the heightened pleading requirements of Rule 9(b).  As such, the Complaint should be dismissed.

III.    **Any non-fraud claims against Defendants fail as a matter of law.**

Even if this Court were to look past the demand and pleading deficiencies in the Complaint, Plaintiff's non-fraud claims against MAM and the directors must be dismissed due to exculpatory provisions in the Fund's Advisory Agreement and Articles of Incorporation.[9]

A.    **The Advisory Agreement between the RHY Fund and MAM bars any non-fraud claims.**

The Advisory Agreement between the RHY Fund and MAM contains a provision limiting MAM's liability, which precludes any claim against MAM for negligence, breach of fiduciary duty, or breach of contract.  Section 12.1 provides that MAM will not be liable to the Fund "for any error of judgment or mistake of law or for any loss suffered by the Fund," in the absence of "willful misfeasance, bad faith, or gross negligence in the performance of the Adviser's duties, or by reason of the Adviser's reckless disregard of its obligations and duties under this Agreement."  See Curley Dec. Ex. 5 (RHY Fund Advisory Agreement).

Such provisions are well accepted and enforceable under Maryland law and the ICA.  See Wolf v. Ford, 644 A.2d 522, 528 (Md. 1994) (upholding the validity of the exculpatory clause at issue and explaining that "[b]ecause of the volatile nature of financial markets, what may appear to be negligence in the purchase of securities one year may eventually turn out to be a stroke of genius in following years, and vice versa.  Thus, the allocation of risk of negligence between parties to a private contract is not patently offensive; rather, it is part and parcel of the freedom to contract in private matters."); see also 15 U.S.C. § 80a-17(i) (permitting such provisions and voiding only those provisions in contracts with investment advisers that purport to exculpate the adviser's

---

[9]    The Court may take judicial notice of both the Articles of Incorporation and the Advisory Agreement on a motion to dismiss, as both are central to Plaintiff's claims and publicly filed with and available from the SEC.  See In re Keithley Instruments, Inc. Sec. Litig., 268 F. Supp. 2d 887, 893 (N.D. Ohio 2002).  True and complete copies of the Articles of Incorporation and the Advisory Agreement are exhibited to the RHY Fund's Registration Statements.  See Curley Dec. Ex. 5 (RHY Fund Advisory Agreement (form filed as Exhibit G to Amended Registration Statement on Jan. 9, 2006)); id. Ex. 6 (RMK Multi-Sector High Income Fund, Inc., Articles of Incorporation (dated Nov. 14, 2005)).

18

"willful misfeasance, bad faith, or gross negligence…[or] reckless disregard of his obligations and duties under such contract or agreement.").

To state a viable claim for relief, therefore, Plaintiff must adequately allege that MAM engaged in conduct outside the scope of the provision at issue in discharging its obligations under the Advisory Agreement.  Otherwise, dismissal of claims based on conduct expressly protected by a contractual provision is warranted under Rule 12(b)(6).  See Trumball Inv., Ltd. v. Wachovia Bank, N.A., 2005 WL 6148880, *4-5 (E.D. Va. Apr. 15, 2005) (holding that claims for breach of contract were barred by an exculpatory clause); CompuSpa, Inc. v. I.B.M. Corp., 228 F. Supp. 2d 613, 626-27 (D. Md. 2002) (holding that a "limitation of liability clause" bars liability for breach of contract); Champion Home Builders Co. v. ADT Sec. Servs., Inc., 179 F. Supp. 2d 16, 23 (N.D.N.Y. 2001) (same).

Here, Plaintiff has failed to allege anything more than conclusory assertions of liability.  For example, Plaintiff alleges that "[e]ach of the Individual Defendants knew, should have known, or recklessly disregarded that the individual defendants violated and breached their fiduciary duties." (Complaint ¶ 66.)   Without any supporting facts, such bare legal conclusions do not "raise a right to relief above a speculative level," and Plaintiff's Complaint must be dismissed.  See Twombly, 550 U.S. at 555; see also Ashcroft, 129 S. Ct. at 1949.

**B.      Claims against the Directors are improper under the Fund's Articles of Incorporation.**

Any and all claims against the directors are barred by the limitation on liability contained in Section 13.A.1 of the RHY Fund's Articles of Incorporation, which provides: "[t]o the maximum extent permitted by applicable law (including the laws of the State of Maryland and the 1940 Act) as currently in effect or as hereafter amended … [n]o director or officer of the Corporation shall be liable to the Corporation or its stockholders for money damages."  (Curley Dec. Ex. 6 (RMK Multi-Sector High Income Fund, Inc., Articles of Incorporation).)  Both Maryland law and the ICA permit

19

mutual funds to limit the liability of their officers and directors, so long as the limitation does not protect against liability for "willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his office."  15 U.S.C. § 80(a)-17(h); see also Md. Code Ann. Corps. & Ass'ns § 2-405.2; Cts. & Jud. Proc. § 5-418 (providing that an officer's or director's liability to the corporation or its stockholders may not be limited where there was a finding "that the person's action, or failure to act, was the result of active and deliberate dishonesty and was material to the cause of action adjudicated in the proceeding").  As previously stated, Plaintiff fails to adequately plead any claim for fraud against any of the Defendants, nor does she provide any allegations that the directors engaged in conduct not otherwise protected by the exculpation provision.  These claims must be dismissed.

**IV.    Plaintiff improperly brings her § 11 claim against Defendant MAM.**

Plaintiff's claim under § 11 of the 1933 Act also fails as a matter of law.  Plaintiff purports to bring this action "on behalf of" the Fund.  A claim under § 11, however, inures to the shareholders of the Fund, and not the Fund itself.  See 15 U.S.C. § 77k(a).  Plaintiff's inclusion of a direct § 11 claim in this litigation is improper.  Even if the Court were to assume that this direct claim is properly brought in a derivative action, MAM would not be a proper party to such a claim.  Section 11 expressly provides for the liability of the issuer; the directors of the issuer; persons named, by their consent, in the registration statement as about to become directors of the issuer; every person who signs the registration statement; every expert who is named by consent as having certified or prepared any part of the registration statement; and every underwriter of the relevant security.  See 15 U.S.C. § 77k(a).  MAM, as adviser and manager of the Fund, does not meet any of these requirements.  As such, the § 11 claim should be dismissed.

## <u>CONCLUSION</u>

Plaintiff has failed to satisfy the demand requirements of Maryland Law and as such, her Complaint must be dismissed.  Furthermore, dismissal of Plaintiff's claims likewise is warranted as Plaintiff's claims fail as a matter of law.

DATED this 30th day of July 2009.

Respectfully submitted,


/s/ Matthew M. Curley
Michael L. Dagley
Matthew M. Curley
W. Brantley Phillips, Jr.
BASS BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, TN 37238
(615)742-6200

Shepherd D. Tate
Michael A. Brady
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, Tennessee   38103-3672
(901) 543-5900

*Attorneys for Morgan Asset Management, Inc.,*
*Allen B. Morgan, Jr., and J. Kenneth Alderman*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2009, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

Jeffrey Maletta
Nicole A. Baker
K& L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006

Kevin H. Sharp
DRESCHER & SHARP, P.C.
1720 West End Avenue, Suite 300
Nashville, TN 37212

J. Allen Carney
Randall K. Pulliam
Bart Dalton
CAULEY BOWMAN CARNEY &
WILLIAMS PLLC
11311 Arcade Drive, Suite 200
Little Rock, AR 72211

Kevin C. Logue
Asa R. Danes
PAUL HASTINGS
Park Avenue Tower
75 E. 55th Street
First Floor
New York, NY 10022

/s/ Matthew M. Curley

22