IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | | |
|---|---|---|
| _____ | | |
| IN RE REGIONS MORGAN KEEGAN | ) | |
| SECURITIES, DERIVATIVE and ERISA | ) | MDL Docket No. 2009 |
| LITIGATION | ) | |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| *Ryan c. Morgan Asset Management,* | ) | |
| *Inc.,* No. 2:08-cv-02162-SMH-dvk | ) | |
| _____ | ) | |

**MEMORANDUM IN OPPOSITION TO THE MOTIONS TO DISMISS OF
DEFENDANTS JACK R. BLAIR, JAMES STILLMAN R. MCFADDEN, W. RANDALL
PITTMAN, MARY S. STONE, ARCHIE W. WILLIS, ALBERT C. JOHNSON, ALLEN B.
MORGAN, JR., J. KENNETH ALDERMAN, MORGAN ASSET MANAGEMENT, INC.,
AND HELIOS MULTI-SECTOR HIGH INCOME FUND, INC.**

J. Allen Carney
Randall K. Pulliam
James L. Kauffman
**Carney Williams Bates
    Bozeman & Pulliam, PLLC**
11311 Arcade Drive, Suite 200
Little Rock, AR. 72212
(501) 312-8500

Kevin H. Sharp
**Drescher & Sharp, P.C.**
1720 West End Avenue, Suite 300
Nashville, TN. 37212
(615) 425-7111

*Attorneys for Derivative Plaintiff
Rebecca Ryan*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    The RHY Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    The Individual Defendants and Their Duties . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.   FACTS RELATING TO DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    The Defendants Face Civil Liability From RHY Shareholders . . . . . . . . . . . . . . 8

      B.    The Defendants' Exodus from the RHY Fund . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I.    DEMAND ON THE RHY FUND'S BOARD OF DIRECTORS WAS
      EXCUSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      A.    Derivative Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      B.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      C.    The Relevant Facts Demonstrate That the Director Defendants
            Are Personally and Directly Conflicted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      D.    The Relevant Facts Demonstrate That the Director Defendants
            Are Controlled . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      E.    Exculpatory Provisions and the ICA Do Not Shield The
            Defendants From Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

      F.    The Facts Concerning the Defendants' Exodus From the RHY
            Fund Demonstrate Demand Futility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

II.   PLAINTIFF STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page No.**

*Abbey v. Control Data Corp.*,
    603 F.2d 724 (8th Cir 1979), cert. denied,
    444 U.S. 1017, 62 L. Ed. 2d 647, 100 S. Ct. 670 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Am. Int'l Group, Inc. v. Greenberg*,
    2009 Del. Ch. LEXIS 15, at \*113-114 (Del. Ch. Feb. 10, 2009) . . . . . . . . . . . . . . . . . . . 19

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Beam v. Stewart*,
    845 A.2d 1040 n.8 (Del. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Burks v. Lasker*,
    441 U.S. 471, 99 S. Ct. 1831, 60 L. Ed. 2d 404 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cohen v. Beneficial Loan Corp.*,
    337 U.S. 541, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Daniels, et al. v. v. Morgan Keegan & Company, Inc.*
    Case No. 07-cv-02456-SHM-dkv, Dkt No.1. ¶ 9 . . . . . . . . . . . . . . . . . . . 3, 4, 8, 9, 10, 11

*Dickinson v. Consolidated Traction Co.*,
    114 F. 232 (D.N.J. 1902) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dollens v. Zionts*,
    2002 U.S. Dist. LEXIS 13511, (N.D. Ill. July 14, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*First Hartford Corp. Pension Plan & Trust v. United States*,
    194 F.3d 1279 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Friedman v. Beningson*,
    Civil Action No. 12232, 1995 Del. Ch. LEXIS154,
    at \*10 (Del. Ch. Dec. 4, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Globis Ptnrs., L.P. v. Plumtree Software, Inc.*,
    2007 Del. Ch. LEXIS 169, at *20 (Del. Ch. Nov. 30, 2007) . . . . . . . . . . . . . . . . . . . . . . 20

*Grill v. Hoblitzell*,
    771 F. Supp. 709 (D. Md.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Guttman v. Huang*,
    823 A.2d 492 (Del. Ch. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Hasan v. Clevetrust Realty Investors*,
    729 F.2d 372 (6th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hensley Mfg. v. ProPride, Inc.*,
    2009 U.S. App. LEXIS 19797 (6th Cir. Mich. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Caremark Int'l Inc. Deriv. Litig.*,
    698 A.2d 959 (Del. Ch. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Cendant Corp. Litig.*,
    189 F.R.D. 117 (D. N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re InfoSonics Corp. Derivative Litig.*,
    2007 U.S. Dist. LEXIS 66043 (S.D. Cal. Sept. 4, 2007) . . . . . . . . . . . . . . . . . . . . 22, 23

*In re InfoUSA, Inc. Shareholders Litig.*,
    953 A.2d 963 (Del. Ch. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Morgan Keegan Open-End Fund Litigation*,
    Case No. 07-CV-02784-SHM-dkv, Dkt No. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*In re Oracle Corp. Deriv. Litig.*,
    824 A.2d 917, 937 (Del. Ch. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*J&R Mktg. v. GMC*,
    549 F.3d 384 (6th Cir. Mich. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Joy v. North*,
    692 F.2d 880 (2d Cir. 1982), cert. denied,
    460 U.S. 1051, 103 S. Ct. 1498, 75 L. Ed. 2d 930 (1982) . . . . . . . . . . . . . . . . . . . . . 15

*Lewis v. Anderson*,
    615 F.2d 778 (9th Cir.), cert. denied,
    449 U.S. 869, 66 L. Ed. 2d 89, 101 S. Ct. 206 (1980) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Malone v. Brincat*,
    722 A.2d 5, 11-14 (Del. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19, 20, 21, 24

*Rosengarten v. Buckley,*
    613 F. Supp. 1493 (D. Md. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ross v. Bernhard*,
    396 U.S. 531, 24 L. Ed. 2d 729, 90 S. Ct. 733 (1970) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Seminaris v. Landa*,
    662 A.2d 1350 (Del. Ch. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Scheuer v. Rhodes*,
    416 U.S. 232, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Summers v. United Rubber, Cork, Linoleum & Plastic Workers, Local Union No. 779*,
    1994 U.S. Dist. LEXIS 18195 (M.D. Tenn. Jan. 13, 1994) . . . . . . . . . . . . . . . . . . . . . . 26

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Werbowsky v. Collomb*,
    766 A.2d 123 (Md. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Willis et. al. v. Morgan Keegan & Company, Inc.,*
    Case No. 07-cv-02830-SHM-dkv, Dkt No.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Other Authority**                                                                    **Page No.**

15 U.S.C. § 80(a)-17(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22, 25

Maryland Code, *§ 2-405.1(a)*
*of the Corporations and Associations Article* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Md. Code Ann. Corps. & Ass'ns § 2-405.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22

Plaintiff Rebecca Ryan ("Plaintiff") respectfully submits this memorandum in opposition to the motions to dismiss made by Defendants Jack R, Blair, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, Archie W. Willis, III, and Albert C. Johnson (collectively "the Director Defendants"), Defendants Allen B. Morgan, Jr., J. Kenneth Alderman (collective with the Director Defendants as the "Individual Defendants"), Morgan Asset Management, Inc. ("MAM" collectively with the Individual Defendants as the "Defendants"), and nominal Defendant Helios Multi-Sector High Income Fund, Inc. ("Nominal Defendant") to dismiss Plaintiff's Verified Shareholder Derivative Complaint (the "Complaint").[1]

## PRELIMINARY STATEMENT

On March 13, 2008, Plaintiff brought this derivative action on behalf of the Regions Morgan Keegan Multi-Sector Fund ("RHY Fund" or "the Fund") against the Defendants and sought to recover for RHY Fund the millions of dollars of damages caused by Defendants' breaches of fiduciary and professional duties, acts of bad faith, waste of corporate assets, and gross mismanagement. Plaintiff alleged that the registration statements, prospectuses, and other filings pursuant to which the Fund was sold to the public contained material misstatements and omissions of material facts. Additionally, Plaintiff alleged that Defendants acted with knowledge, gross negligence and reckless disregard of their fiduciary duties. Defendants have moved to dismiss based on essentially two arguments: (1) Plaintiff failed to make a demand and demand is not excused; and (2) Plaintiff failed to state a claim upon which relief may be granted. As explained herein, both of Defendants' arguments should be rejected and their motions to dismiss should be denied.

---

[1] Contrary to the Defendants' assertion, the Complaint was verified by Plaintiff. Memorandum of Law in Support of Motion to Dismiss of Morgan Asset Management, Inc., Allen B. Morgan, Jr., and J. Kenneth Alderman's ("MAM Br.") at 1.

In the year 2007, the RHY Fund experienced a meltdown of unprecedented proportions, resulting in a total annual loss of 60.55%. This enormous loss was not caused primarily by an economic downturn or market forces, as evidenced by the Fund's drastic under-performance relative to the other similar funds and benchmarks. For example, the Lehman Brothers U.S. High Yield Index, a comparable benchmark index to the RHY Fund, gained 1.87% in 2007.

This astonishing meltdown was caused by the Fund's assets being over-concentrated in securities that were very high-risk and illiquid, by the funds concentration of assets in the mortgage sector, by the funds inability to value its assets at reasonable fair value, and by the failure of the Fund to disclose properly these facts and its true financial condition. These disproportionate and adverse effects to the fund could not have been reasonably foreseen or anticipated by investors because of the Fund's misleading disclosures and its failure to disclose the extent to which the securities held were vulnerable to market events, especially given the magnitude of illiquid assets in the Fund and the risks inherent to these assets.

Plaintiff asserts that the Individual Defendants breached their fiduciary duties and that they are strictly liable for misstatements and omissions in the Fund's offering materials. The derivative claims asserted by Plaintiff are based on the Director Defendants' knowledge, gross negligence and reckless disregard of their fiduciary duties. It is important to note that Plaintiffs do not challenge a transaction or specific action by the Fund's Board of Directors. Therefore, there is no decision complained of that enjoys the protection of the business judgment rule. Demand is governed by laws of Maryland, which excuse demand where "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky v.*

*Collomb*, 766 A.2d 123, 144 (Md. 2001). This inquiry, "focuses the court's attention on the real, limited, issue -- the futility of a pre-suit demand -- and avoids injecting into a preliminary proceeding issues that go more to the merits of the complaint." *Id.* In making its determination, the court may consider the allegations of the Complaint or other evidence offered by the parties that bear on this issue of whether demand was futile. *Id.* at 145-46. Further, the *Werbowsky* court explained that a court considers whether, "viewing the evidence in a light most favorable to the plaintiffs, those directors were not conflicted or controlled ... to the point that demand upon them would have been futile." *Id.* at 145-46.

The Defendant Directors could not reasonably be expected to respond to a demand in good faith because, at the time Plaintiff filed her Complaint, all of the Director Defendants were named as defendants in class actions concerning the RHY Fund. Directors who face civil liability in a related class action are conflicted where bringing a derivative action is likely to aid class action plaintiffs in establishing the directors' liability therein.

Perceiving at least a potential conflict between its interests as a defendant in one or more of the class actions on the one hand, and its interests and duties as a fiduciary for its trusts and fiduciary accounts that purchased shares of the RHY Fund, Regions Bank petitioned the Alabama probate court for an order appointing a Trustee *ad litem* for the limited and specific purposes of monitoring, evaluating, and participating in the class actions and taking any and all appropriate actions on behalf of the trust and custodial accounts related to the Fund. *See Daniels, et al. v. v. Morgan Keegan & Company, Inc ("Daniels"),* Case No. 07-cv-02456-SHM-dkv, Dkt No.1. ¶ 9. The Alabama court granted Regions Bank's petition, and appointed Trustee *ad litem* C. Fred Daniels. *Id.* Trustee *ad litem* Daniels conducted an investigation and brought several class actions, including a class action

specifically concerning the RHY Fund, alleging that defendants, including all the Defendants named herein, violated Sections 11, 12(a)(2), and 15 of the Securities Act, Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Section 34(b) of the Investment Company Act. *See Daniels,* Case No. 07-cv-02456, Dkt No. 1. Just as Regions Bank understood the conflict between its interest as a defendant in the class actions and as a fiduciary to the purchasers of RHY Fund, so too are the Defendant Directors unable to discharge their fiduciary duties with respect to any demand that might have been made.

In spite of RHY Fund's massive losses and the Defendants' knowledge that the assets of the fund were being mismanaged, the Individual Defendants unanimously agreed to extend the advisory agreement between the Fund and MAM, its advisor. MAM is a wholly-owned subsidiary of MK Holdings, Inc, which is a wholly-owned subsidiary of Regions Financial Corporation. Regions Financial Corporation is a regional holding company and the wholly-owning parent corporation of Regions Bank, along with MK Holdings, Inc. There is no indication that any of the Individual Defendants considered or was capable of considering any fund advisors other than MAM. This extension demonstrates the acquiescence of the Individual Defendants to the Fund Advisor's misconduct and the ultimate futility that would result from seeking a demand.

Although Defendants claim they are exculpated under the provisions of the Fund's Articles of Incorporation, they admit that exculpatory provisions do not apply to "willful malfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his office." 15 U.S.C. § 80(a)-17(h); *see also* Md. Code Ann. Corps. & Ass'ns § 2-405.2. Defendants are charged with claims based on their knowledge, gross negligence and reckless disregard of their fiduciary duties, and as such, these claims cannot be exculpated.

Furthermore, instead of contemplating any corrective action regarding the issues raised by class action complaints filed as early as December 2007, the Individual Defendants began planning their exodus from the Fund and their removal from any oversight responsibilities in the transfer of the Fund's assets to Hyperion Brookfield Asset Management ("HBAM"). By doing so, the Individual Defendants were so committed to a course of action that would render any demand made upon them futile.

The facts alleged by Plaintiff and the evidence before this Court demonstrate that at the time Plaintiff filed her Complaint, demand was futile. Likewise, because the exculpatory provisions provide no shield from liability for the Defendants, Plaintiff states a claim upon which relief may be granted.[2]

**STATEMENT OF FACTS**

**I. BACKGROUND**

**A.    The RHY Fund**

The RHY Fund made its initial offering to the public on January 23, 2006. (¶ 26.)[3] The Fund is a closed-end fund that offered a limited amount of shares to potential investors, and initially offered those shares at a price of $15.00 per share. *Id.* The price of shares of a close-end fund are determined partially by the value of the investments in the fund and partially by a premium place on the shares by the market. *Id.*

Along with its initial public offering, the RHY Fund issued a Registration Statement and

---

[2] In its brief, HBAM does not challenge the sufficiency of Plaintiff's Complaint.

[3] All references to "¶ __" refer to Plaintiff's Verified Shareholder Derivative Complaint unless otherwise indicated.

Prospectus describing, *inter alia*, the Fund's investment objectives and policies. (¶ 27.) According to the registration statement and prospectus, the Fund was described as a newly organized, diversified, closed-end management investment company with MAM serving as the Fund's investment adviser. (¶ 5, 27.) The investment objectives in the prospectus stated that the Fund was to invest in a wide range of debt securities, including corporate bonds, mortgage-backed and asset-backed securities, convertible debt securities and distressed securities. (¶ 27.)

### B.    The Individual Defendants and Their Duties

At its inception, the eight Individual Defendants served as directors of the RHY Fund. (¶ 6-13.) The Individual Defendants each owed the shareholders of RHY Fund the fiduciary duty to exercise due care and diligence in the administration of the affairs of the RHY Fund and in the use and preservation of its property and assets. (¶ 17.) The Individual Defendants owed shareholders of RHY Fund the highest obligation of good faith and fair dealing. *Id.* By virtue of such duties, the Individual Defendants were required, among other things, to:

(1) select and retain the Fund's Investment Advisor;

(2) manage, conduct, supervise and direct the business affairs of RHY Fund in accordance with federal and state law and federal rules and regulations and the charter and bylaws of RHY Fund;

(3) neither violate nor knowingly permit any officer, director, or employee of RHY Fund to violate applicable federal laws, rules and regulations and/or state law;

(4) establish and maintain systematic and accurate reports and records of the business and affairs of RHY Fund and procedures for reporting of the business and affairs to the Board of Directors and to periodically investigate, or cause independent investigation to be made of

said reports and records;

(5) maintain and implement an adequate and functioning system of internal financial and accounting controls, such that RHY Fund's financial statements and information would be accurate;

(6) exercise reasonable control and supervision over the public statements to the securities markets and trading in RHY Fund stock by the officers and employees of RHY Fund;

(7) remain informed as to the status of RHY Fund's operations, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with state and federal securities laws;

(8) supervise the preparation and filing of any audits, reports or other information required by law from RHY Fund and to examine and evaluate any reports of examinations, audits or other financial information concerning the financial affairs of RHY Fund and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth herein; and

(9) prudently protect the Fund's assets, including taking all necessary steps to recover assets improperly paid to fund executives and directors together with related costs (professional fees) proximately caused by the conduct described herein. (¶ 21.)

Pursuant to their duties, the Individual Defendants selected MAM to manage and advise the Fund and James Kelsoe as the portfolio manager of the Fund. (¶ 5, 32.) The Individual Defendants and MAM, as directors and the manager of RHY Fund and through their receipt of reports, attendance at meetings and access to all of the Fund's books, records and other proprietary

information, had responsibility for and therefore were in possession of material, non-public information concerning the Fund and its operations, finances and business prospects. (¶ 15.) Additionally, as directors and managers of a publicly held company, the Individual Defendants and MAM had a duty to promptly disseminate accurate and truthful information with respect to the Fund's operations so that the market price of the Fund's common stock would be based on truthful and accurate information. (¶ 18.)

## II.    FACTS RELATING TO DEMAND

### A.    The Defendants Face Civil Liability From RHY Shareholders

In numerous derivative lawsuits and class actions filed or transferred to this Court, the Defendants face personal civil liability for violations of state and federal laws.[4]  The first of these actions was filed on December 6, 2007 and alleged that defendants, including all the Defendants named herein, violated Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), and Section 34(b) of the Investment Company Act of 1940 (the "Investment Company Act"). *See In re Morgan Keegan Open-End Fund Litigation*, Case No. 07-CV-02784-SHM-dkv, Dkt No. 1.  Another class action, specifically concerning the RHY Fund, was filed on December 21, 2007 and alleged that defendants, including all the Defendants named herein, violated Sections 11, 12(a)(2), and 15 of the Securities Act. *See Willis v. Morgan Keegan & Company, Inc. ("Willis")*, Case No. 07-cv-02830-SHM-dkv, Dkt No.1. Perceiving at least a potential conflict between its interests as a defendant in one or more of the class actions (and as an affiliate of other defendants in the class

---

[4] *In re Morgan Keegan Open-End Fund Litigation*, United States District Court, Western District of Tennessee, Case No. 07-cv-02784-SHM-dkv, Dkt No.1; *Willis, et al. v. Morgan Keegan & Company, Inc.,* Case No. 07-cv-02830-SHM-dkv, Dkt No.1; *Daniels, et al. v. v. Morgan Keegan & Company, Inc.,* Case No. 07-cv-02456-SHM-dkv, Dkt No.1.

actions) on the one hand, and its interests and duties as a fiduciary for its trusts and fiduciary accounts that purchased shares of the RHY Fund, Regions Bank petitioned the Alabama probate court for an order appointing a Trustee *ad litem* for the limited and specific purposes of monitoring, evaluating, and participating in the class actions and taking any and all appropriate actions on behalf of the trust and custodial accounts related to the Fund. *See Daniels, et al. v. v. Morgan Keegan & Company, Inc. ("Daniels"),* Case No. 07-cv-02456-SHM-dkv, Dkt No.1. ¶ 9. The Alabama court granted Regions Bank's petition, and appointed C. Fred Daniels as Trustee *ad litem*. *Id.* Trustee *ad litem* Daniels conducted an investigation and brought several class actions, including a class action specifically concerning the RHY Fund, which was filed on July 11, 2008 and alleged that defendants, including all the Defendants named herein, violated Sections 11, 12(a)(2), and 15 of the Securities Act, Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Section 34(b) of the Investment Company Act. *See Daniels,* Case No. 07-cv-02456, Dkt No.1.

Just as Regions Bank understood the conflict between its interest as a defendant in the class actions and as a fiduciary to the purchasers of RHY Fund, so too are the Defendant Directors unable to discharge their fiduciary duties with respect to any demand that might have been made. All six of the Defendant Directors served on the boards of eighteen (18) RMK funds and face civil liability in securities class actions for their omissions and representations with respect to these funds. Directors who face civil liability in a related class action cannot be disinterested where bringing a derivative action is likely to aid class action plaintiffs in establishing the directors' liability therein.[5]

The Registration Statement, which was signed by all Director Defendants, and the

---

[5] *See Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993) ("[d]irectorial interest also exists where a corporate decision will have a materially detrimental impact on a director, but not on the corporation or the stockholders.")

Prospectus and Statement of Additional Information were the specific responsibility of the Director

Defendants.  (¶ 21, 72.)  However, the Registration Statement and Prospectus and Statement of

Additional Information for the offering of the RHY Fund were inaccurate and misleading, as they

contained untrue statements of material facts, omitted to state required material facts, and omitted

to state required material facts.  (¶ 34-46, 71.)    Plaintiff alleges that the Fund's Registration

Statement and Prospectus misstated: (1) the proper value of the underlying assets held by the Fund;

(2) the extent of the Fund's risk exposure to mortgage-backed assets; and (3) the extent that the Fund

was subject to fair value procedures.  (¶ 35.)    Additionally, Plaintiff alleges that the Fund's

Registration Statement and Prospectus omitted that (1) the Fund lacked adequate controls and hedges

to minimize the risk of loss from mortgage delinquencies; and (2) the Fund carried an extensive

liquidity risk because large positions were held in illiquid securities. (¶ 34.)  Under Section 11 of the

Securities Act, Plaintiff alleges that the Defendants are strictly liable for these misstatements and

omissions. (¶ 34.)[6]

The evidence before this Court supports Plaintiff's allegations and demonstrates that the

Defendants face substantial civil liability in securities class actions for their acts and omissions

specifically with respect to the RHY Fund.  For instance, the RHY Fund was required to comply with

certain investment limitations set forth in the Fund's Registration Statement and Prospectus,

including a specific limitation that restricted the fund from investing 25% or more of the Fund's total

assets in the securities of companies whose principal business activities are in the same industry. *See*

---

[6] *J&R Mktg. v. GMC*, 549 F.3d 384, 392 (6th Cir. Mich. 2008)("Section 11, however, only
imposes strict liability on those who fail to include information "required to be stated" in the
registration statement ...Section 11 does not impose a further requirement of knowledge, as a fraud
action would.")

*Daniels,* Case No. 07-cv-02456, Dkt No. 1 ¶ 45. In fact, the investments of the RHY Fund tied to

the mortgage industry exceeded 25%, a fact that was never disclosed in the Fund's SEC filings. *See*

*Daniels,* Case No. 07-cv-02456, Dkt No.1 ¶67.

      All of the Defendants, by virtue of their expertise and positions, were entrusted with material

adverse information about the RHY Fund. (¶ 22.)  Showing complete disregard for their fiduciary

duties, the Defendants failed to disclose and concealed adverse facts that were made known to them

regarding the true financial condition of the RHY Fund. (¶ 22, 28-31.)  Defendants were charged

with fiduciary duties to remain informed as to the status of RHY's operations, and upon receipt of

notice or information of imprudent or unsound practices to make a reasonable inquiry therewith. (¶

21.)  In attempted discharge of these duties, the Defendants stated that the Fund's advisor would,

under the direction of the Fund's Board of Directors, exercise good faith in determining the fair

value of any securities for which market quotations were not available and "are valued at fair value

as determined in good faith by the Adviser's Valuation Committee using the procedures established

by and under the direction of the Company's Board of Directors." *See Daniels,* Case No. 07-cv-

02456, Dkt No. 1 ¶ 71; SEC Form N-Q, Quarterly Statement of Portfolio Holdings of Registered

Management Investment Company (filed Feb. 28, 2007).  However, Defendants breached their

fiduciary duties, and their misstatements concerning the valuation of assets in the Fund were revealed

in July 2007, when the Fund publicly acknowledged its exposure to the subprime market and

admitted to investors that it was encountering difficulties in determining the fair value of its assets

to such an extent that the Fund stated that it required a consultant to determine the fair value of its

assets.  (¶ 31.)

      Of the Company's six Director Defendants, one (Alderman) is admittedly not independent

or disinterested.  (¶ 7.); MAM's Br. at 3. Of the remaining five, at least two are so conflicted or controlled to render demand futile.

Defendant McFadden was Chief Manager of McFadden Communications, LLC and has been a majority owner of McFadden Communications, LLC since 2002 (¶ 10.)   McFadden Communications, LLC sold services to Regions Bank or its subsidiaries that generate significant revenues: from January 1, 2005 through June 30, 2007, total revenues from these services represented approximately 5.0% of McFadden Communications, LLC's revenues.  Defendant Stone has been a professor of Accounting at the University of Alabama's Culverhouse School of Accountancy since 1981 and has served as the Director of the Culverhouse School of Accountancy since 2002. (¶ 11.)   Considering her special expertise, education, and knowledge in the field of accounting, Defendant Stone should have been keenly aware of the adverse facts regarding RHY Fund's true financial condition, and the Defendants' repeated false and misleading representations that the RHY Fund's financial statements complied with Generally Accepted Accounting Procedures ("GAAP").(¶ 37-46.)  In additional to facing personal liability from the derivative and class action lawsuits filed against her, Defendant Stone risks substantial harm to her professional reputation in the field of accounting.

Director Defendants Alderman, McFadden, Stone, Pittman, Johnson and Willis all signed the false and misleading Registration Statement for the RHY Fund, and are strictly and personally liable under Section 11 of the Securities Act. (¶ 70-77.)  Additionally, all of the Director Defendants were charged with the responsibility of overseeing the Fund Adviser's Valuation Committee to properly determine the fair value of the Fund's assets, and completely failed to exercise proper oversight, if any at all.

-12-

### B.    The Defendants' Exodus from the RHY Fund

In spite of the enormous losses, under-performance, and mismanagement of the RHY Fund, on October 31, 2007, the Director Defendants unanimously agreed to extend the agreement between the Fund and the Fund Adviser MAM. (¶ 54.)  There is no evidence that the Director Defendants made any consideration of hiring a Fund Adviser other than MAM.  Furthermore, since RHY Fund and MAM share the same corporate parent, it is unclear whether the Director Defendants could have selected a Fund Advisor who was not tied to the same corporate parent. (¶ 55.)  Indeed, the Director Defendants served on the Board of Directors for all eighteen Regions Bank funds, and in spite of the difference between each fund's investment strategy and relative performance, the Director Defendants selected MAM as fund advisor and James Kelsoe as the portfolio manager for all eighteen funds.  Surely, warnings and "red flags" regarding the management of any of these funds should have given the Director Defendants notice that a careful examination of the RHY Fund Advisor and portfolio manager was necessary. The facts that were known to the Director Defendants or should have been reasonably discovered upon examination warranted the replacement of the RHY Fund Advisor and portfolio manager.  The extension of MAM and James Kelsoe as the Fund's Advisor and portfolio manager demonstrates the Director Defendant's acquiescence to the Fund Adviser and portfolio manager's improper conduct, and their unwillingness or inability to take any corrective action. (¶ 54-55.)

The Individual Defendants were not spurred to action until after the first of many class actions lawsuits was filed on December 6, 2007. *See In re Morgan Keegan Open-End Fund Litigation*, Case No. 07-CV-02784-SHM-dkv, Dkt No.1.  Thereafter, Defendants Morgan and Blair retired from the RHY Board effective December 31, 2007. See MAM Br. at 3. Unbeknownst to

-13-

Plaintiff at the time of filing her Complaint, MAM began discussions in late December 2007 to transfer the investment Management of the RHY Fund to HBAM. The Director Defendants also began to plan their exodus from the RHY Fund, as was evidenced by the proposal containing the provision that the Director Defendants would be replaced by new directors of other funds managed by HBAM (the "HBAM Directors"). On April 21, 2008, after Plaintiff filed this action, the Director Defendants approved MAM's proposal and recommended to shareholders in a May 2, 2008 proxy statement that the proposal be approved. Immediately following the shareholders' meeting in July 2008, management of the RHY fund was transferred to HBAM, and the HBAM Directors took office. See HBAM Br. at 1.

Considering that the Defendant Directors were so committed to a course of action that would effectively end their responsibilities for oversight of the Fund, it is extremely unlikely that the Director Defendants would have taken any action in response to a demand. Having already been sued individually in numerous class action and derivative lawsuits, the Director Defendants focused their attention on terminating their fiduciary responsibilities to escape all future oversight responsibility for the RHY Fund. It defies credulity to believe that the Defendant Directors would have, upon receipt of a demand, postponed their planned exits in order to oversee long-term litigation against Defendants, including themselves.

Eighteen (18) months have passed since the filing of Plaintiff's Complaint, during which time neither the Director Defendants nor their successors, the HBAM Directors, have taken any substantive action. At the least, the RHY Fund directors could have formed a Special Litigation Committee ("SLC") to investigate the claims asserted in Plaintiff's Complaint. Indeed, the directors' choice to seek the advice of a SLC is "common practice" and these entities are utilized regularly by

-14-

corporate boards to investigate derivative claims. *Werbowsky v. Collomb,* 766 A.2d 123, 144 (Md. 2001)("It may be their first knowledge that a decision or transaction they made or approved is being questioned, and they may choose to seek the advice of a special litigation committee of independent directors, which has become a common practice. . ."); *See e.g. Burks v. Lasker,* 441 U.S. 471, 99 S. Ct. 1831, 60 L. Ed. 2d 404 (1979); *Hasan v. Clevetrust Realty Investors*, 729 F.2d 372 (6th Cir. 1984); *Joy v. North*, 692 F.2d 880 (2d Cir. 1982), cert. denied, 460 U.S. 1051, 103 S. Ct. 1498, 75 L. Ed. 2d 930 (1982); *Lewis v. Anderson*, 615 F.2d 778 (9th Cir.), cert. denied, 449 U.S. 869, 66 L. Ed. 2d 89, 101 S. Ct. 206 (1980); *Abbey v. Control Data Corp.*, 603 F.2d 724 (8th Cir 1979), cert. denied, 444 U.S. 1017, 62 L. Ed. 2d 647, 100 S. Ct. 670 (1980); *Rosengarten v. Buckley,* 613 F. Supp. 1493 (D. Md. 1985). The inaction by the Director Defendants and continued inaction for over *eighteen months* by the HBAM Directors demonstrates that past and current management are so committed to not pursuing these claims that any demand would, for all practical purposes, be futile.

**ARGUMENT**

I.    **DEMAND ON THE RHY FUND'S BOARD OF DIRECTORS WAS EXCUSED**

A.    **Derivative Actions**

As a check on broad managerial authority, directors are required to perform their duties in good faith, in a manner they reasonably believe to be in the best interest of the corporation, and with the care that an ordinarily prudent person in a like position would use under the circumstances. *See* Maryland Code, *§ 2-405.1(a) of the Corporations and Associations Article.* Derivative action permits an individual shareholder to bring "suit to enforce a corporate cause of action against officers, directors, and third parties." *Ross v. Bernhard*, 396 U.S. 531, 534, 24 L. Ed. 2d 729, 90 S. Ct. 733 (1970). Devised as a suit in equity, the purpose of the derivative action was to place in the

-15-

hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of "faithless directors and managers." *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949).

From its inception, the shareholder derivative action was developed as an equitable device to enable shareholders to enforce a corporate right that the corporation failed to assert on its own behalf. *Werbowsky v. Collomb*, 766 A.2d 123, 133 (Md. 2001).   This is not to suggest that a derivative suit is itself a form of equitable relief. *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1294 (Fed. Cir. 1999)("The derivative suit, however, is not a form of equitable relief, but rather a procedural device with origins in equity the use of which does not transgress any jurisdictional limits.")  The relief sought by a derivative action inures to the benefit of the corporation upon whose behalf it is asserted.  *Dickinson v. Consolidated Traction Co.*, 114 F. 232, 244 (D.N.J. 1902) ("The relief sought must inure to the benefit of the corporation, which is made defendant for the purpose of bringing it into court, where, as we have said, it really stands in the attitude of a plaintiff.")  Such relief "could include the recovery of losses occasioned by self-dealing or fraudulent or grossly negligent misconduct on the part of the corporate directors or officers." *Werbowsky*, 766 A.2d at 133.

###### B.      Standard of Review

The parties agree that the demand requirement for this derivative suit is governed by the laws of the state of incorporation for the RHY Fund, upon whose behalf Plaintiff brings this action. (Defs.' Blair, et. al.  Mot. to Dismiss at 2.)  RHY Fund  is incorporated in Maryland, and as such, Maryland law controls the circumstances under which demand in this case should be excused.  (¶4.) Maryland law requires a "practical" and "common sense" inquiry into the issue of whether a demand

-16-

upon directors would be futile.  *Grill v. Hoblitzell*, 771 F. Supp. 709, 711-12 (D. Md.1991).

Plaintiffs admittedly did not make a demand on RHY Fund's Board of Directors, but pre-litigation demand is excused in those circumstances where "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky*, 766 A.2d at 144.[7]  This inquiry, "focuses the court's attention on the real, limited, issue - - the futility of a pre-suit demand - - and avoids injecting into a preliminary proceeding issues that go more to the merits of the complaint - - whether there was, in fact, self-dealing, corporate waste, or a lack of business judgment with respect to the decision or transaction under attack."  *Id.* In applying the demand futility standard, *Werbowsky* held that a court may consider *the allegations or evidence* offered by plaintiff.  *Id.* at 145 (emphasis added.)

In *Werbowsky*, the Court of Appeals of Maryland considered whether the circuit court erred by applying a summary judgment procedure to its futility analysis.  *Werbowsky*, 766 A.2d 123, 144-45.  The *Werbowsky* circuit court had previously determined, on a motion to dismiss the amended complaint, that demand was excused.  *Id.* at 130.  In doing so, the circuit court relied heavily on guidance from Delaware and examined futility based on whether there was a reasonable doubt (1) the directors are disinterested and independent, and (2) the challenged transaction was the product of the valid exercise of business judgment.  *Id.*  After an unsuccessful interlocutory appeal, the *Werborsky* defendants requested that the circuit court revisit the demand issue through a motion for

---

[7]  *Werborsky* considered demand futility where the board engage in a particular transaction that was challenged by the derivative plaintiff, not as here, where the challenged conduct consists of inaction by the Board of Directors in the face of actionable knowledge.  To Plaintiff's knowledge, there is no decision subsequent to *Werobowsky* that applies its demand futility test to a derivative suit based on the failure of the board to act.

summary judgment. *Id.* The circuit court considered additional evidence related to demand futility in the summary judgment proceeding and concluded based on the evidence proffered therein that plaintiffs had failed to establish - using the two pronged Delaware test - a reasonable doubt that a majority of the board were disinterested and independent. *Id.* at 132. In reviewing this determination, the *Werbowsky* appellate court concluded, "the [circuit] court used a summary judgement procedure but, on this record, did not err in doing so.... even viewing the evidence in a light most favorable to the plaintiffs, those directors were *not conflicted or controlled* ... to the point that demand upon them would have been futile." *Id.* at 145 (Emphasis added).

Although the *Werbowsky* court declined to adopt Delaware's two-pronged test, the second prong of the *Werbowsky* test closely resembles the test articulated by Delaware courts. The second prong of the *Werbowsky* test, which excuses demand where a majority of the directors are personally and directly conflicted, is very similar to the first prong of the *Aronson* test which excuses demand where there is a reasonable doubt that the directors are disinterested. *Werbowsky*, 766 A.2d at 145- 46; *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984) (demand is excused where "a reasonable doubt is created that: (1) the directors are disinterested and independent...) Likewise, the *Werbowsky* holding that the directors were not "controlled" indicates that the application of the Maryland demand futility analysis is very similar to the component from the *Aronson* test which excuses demand where there is a reasonable doubt that the directors are independent. *Id.* While the *Werbowsky* court does not provide much guidance on the method by which a court should apply its demand futility test, the opinion provides that the court may look to the allegations in the complaint or evidence offered in making its determination. *Werbowsky* 766 A.2d at 132, 144-45. Additionally, while not controlling the demand futility analysis for a company incorporated in Maryland, the

analysis of disinterestedness and independence under Delaware law may give guidance on the application of the *Werbowsky* test.

In considering the requirements of Rule 23.1, "the demand requirement is not, as the Defendants would have it, an immunity shield for defendants. It is an assurance that the stockholders' duly elected representatives control the legal rights of the corporation unless there is a basis for excusing their control." *Am. Int'l Group, Inc. v. Greenberg*, 2009 Del. Ch. LEXIS 15, at *113-14 (Del. Ch. Feb. 10, 2009). The question presented in a demand futility analysis, "is not whether plaintiff's factual account is a correct one; nor is it whether the liability follows if it is correct in whole or substantial part. Rather the question at this stage is whether plaintiff has pleaded with sufficient specificity facts that raise a reasonable doubt concerning the board of directors' ability fairly to consider the questions that [the] suit raises." *Friedman v. Beningson*, Civil Action No. 12232, 1995 Del. Ch. LEXIS154, at *10 (Del. Ch. Dec. 4, 1995).

In assessing a director's interest, the question is whether there is a reasonable doubt that a director is able "to act free of personal financial interest and improper extraneous influences" when deciding whether to bring suit on behalf of a corporation. *Rales*, 624 A.2d at 935. The *Rales* court reasoned, "[i]n order to determine whether the Board could have impartially considered a demand at the time [Plaintiffs'] original complaint was filed, it is appropriate to examine the nature of the decision confronting it." *Id.* Further, the test for determining directorial independence "focuses on whether the directors, for any substantial reason, cannot act with only the best interests of the corporation in mind, and not just on whether the directors face pecuniary damage for acting in a particular way." *In re Oracle Corp. Deriv. Litig.*, 824 A.2d 917, 937 (Del. Ch. 2003).

Finally, in making its determination, the Court must not rely on one factor but on "whether

-19-

plaintiffs have alleged facts sufficient to create a reasonable doubt concerning the disinterestedness and independence of the Board . . . from the accumulation of all the facts taken together." *Dollens*, 2002 U.S. Dist. LEXIS 13511, at *14; *see also In re Cendant Corp. Litig.*, 189 F.R.D. 117, 128 (D. N.J. 1999)(in deciding whether demand futility has been properly pled the Court "must not rely on any one factor but examine the totality of the circumstances and consider all of the relevant facts").

The Director Defendants are all incapable of making an impartial decision regarding the prosecution of this litigation. Plaintiffs have alleged particularized facts and provided evidence that demonstrate the Director Defendants are so personally and directly conflicted or controlled that they cannot reasonably be expected to respond to a demand in good faith. To fulfill the demand requirement, Plaintiffs need only demonstrate that *three* of the six Director Defendants could not impartially consider demand because they were conflicted or controlled.[8]

C.    **The Relevant Facts Demonstrate That the Director Defendants Are Personally and Directly Conflicted**

Directors must be deemed conflicted where the decision whether to pursue a demand would have a material adverse effect on that director. In other words, "[d]irectorial interest also exists where a corporate decision will have a materially detrimental impact on a director, but not on the corporation or the stockholders." *Rales*, 634 A.2d 927, 936. In those circumstances, "a director cannot be expected to exercise his or her independent business judgment without being influenced by the adverse personal consequences resulting from the decision." *Id.* Plaintiffs are entitled to a reasonable inference of interestedness where a complaint indicates a "substantial likelihood" liability will be found. *Globis Ptnrs., L.P. v. Plumtree Software, Inc.*, 2007 Del. Ch. LEXIS 169, at *20 (Del.

---

[8]    *See Beam v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004)(demand is excused if the board is evenly divided between interested/not independent and disinterested/independent members).

Ch. Nov. 30, 2007).[9]  The facts detailed herein support the reasonable inference that the Director

Defendants knew or should have known that the RHY Fund did not communicate truthfully with its

shareholders.  At the least, the facts support the reasonable inference that the Defendants consciously

disregarded their responsibility to monitor and oversee the Fund.  Additionally, "[e]ven if a director

has no personal interest in a decision, his discretion must also be free from the influence of other

interested persons."  *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995)(citing *Rales*, 634

A.2d at 936).

When a corporation communicates with its shareholders, even in the absence of a request for

shareholder action, "shareholders are entitled to honest communication from directors, given with

complete candor and in good faith."  *Malone v. Brincat*, 722 A.2d 5, 11-14 (Del. 1998).

Communications that depart from this expectation, particularly where it can be shown that the

directors involved issued their communication with the knowledge that it was deceptive or

incomplete, violate the fiduciary duties that protect shareholders.  *In re InfoUSA, Inc. Shareholders

Litig.*, 953 A.2d 963, 990 (Del. Ch. 2007).   Such violations are sufficient to subject directors to

liability in a derivative claim. *Malone*, 722 A.2d at 14.

Additionally, directors can be liable where they "consciously failed to monitor or oversee [the

company's internal controls] thus disabling themselves from being informed of risks or problems

requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006)(citing *In re Caremark Int'l

Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996)).  The pled facts may support an inference that the

directors were "conscious of the fact that they were not doing their jobs." *Guttman v. Huang*, 823

---

[9]  *See also Rales,* 634 A.2d at 936; *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984).

A.2d 492, 506 (Del. Ch. 2003).  Where directors act in conscious disregard of their responsibilities,

"they breach their duty of loyalty by failing to discharge that duty in good faith." *Stone v. Ritter*, 911

A.2d at 370; *Guttman v. Huang*, 823 A.2d at 506.

The Director Defendants are charged with class action and derivative claims based on their

knowledge, gross negligence and reckless disregard of their fiduciary duties.  These claims, as

Defendants concede, cannot be exculpated under the Fund's Articles of Incorporation because such

provisions do not apply to "willful malfeasance, bad faith, gross negligence or reckless disregard of

the duties involved in the conduct of his office."  15 U.S.C. § 80(a)-17(h); *see also* Md. Code Ann.

Corps. & Ass'ns § 2-405.2.  Thus, the Director Defendants are unable to use the Fund's Articles of

Incorporation exculpatory provision to shield themselves from the claims asserted in multiple

derivative and class action lawsuits before this court, and face a substantial likelihood of liability on

those claims.

Defendants erroneously rely on the California district court decision *In re InfoSonics Corp.*

*Derivative Litig.*, 2007 U.S. Dist. LEXIS 66043 (S.D. Cal. Sept. 4, 2007)("*InfoSonics*") to argue that

a likelihood of liability is not a basis for excusing demand under Maryland law.  First, *InfoSonics*

involved a derivative action that challenged a board decision to approve stock option grants, and the

court noted that mere approval of the grants did not form a basis for liability. *InfoSonics*, 2007 U.S.

Dist. LEXIS 66043 at *18-19.  The analysis of board approval of stock grants is dissimilar to this

case where there is no challenged transaction and the Director Defendants have been already been

sued in both derivative and class actions for making false statements to investors, acting with gross

negligence and reckless disregard of their fiduciary duties, and actively concealing the true financial

condition of the funds and their own malfeasance.  Second, *InfoSonics* considered the logical

tautology that exists where a derivative plaintiff seeks to excuse demand by naming the directors as defendants in the derivative complaint, then claiming there is some likelihood of liability based on those same derivative allegations. *InfoSonics*, 2007 U.S. Dist. LEXIS 66043 at *19. ("If 'likelihood of liability' is based on the allegations of the Complaint, all well-pled complaints would be able to establish demand futility.) The *InfoSonics* court did not consider the situation, whereas here, at the time Plaintiff filed her derivative complaint there were other securities class actions that had already named the directors as defendants.

It is clear in these circumstances - where directors face liability as defendants in both derivative and class actions - directors cannot consider demand free from personal conflicts because to initiate any investigation or pursuit of those derivative claims would subject the directors to substantial liability in the class action lawsuits against them. Regions Bank recognized this conflict, and properly petitioned the Alabama probate court for the appointment of a Trustee *ad litem*. The Alabama probate court so ordered, and the Trustee *ad litem* investigate the potential claims, and later brought securities class action claims against all the Defendants named herein. The Director Defendants could not consider a demand from Plaintiff Ryan in good faith because the they were personally conflicted by already being named as defendants in the securities class actions.

**D.    The Relevant Facts Demonstrate That the Director Defendants Are Controlled**

Under *Werbowsky*, demand is excused where the directors are "conflicted *or controlled* [] to the point that demand upon them would have been futile." *Werbowsky* 766 A.2d at 132, 145-46 (emphasis added). Where demand is excused because directors are controlled is very similar to the Delaware test for demand futility based on the lack of director independence. While Maryland law is scarce on the proper analysis of allegedly controlled directors under the *Werbowsky* test, it is

helpful in this context to consider how independence is analyzed by Delaware courts. Independence, in the context of demand futility, means that a director is able to make a decision based on the corporate merits of the subject before the board rather than extraneous considerations or influences. *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993). Directors' interestedness and independence are often - but not always - interlocking issues. For instance, a director who does not have a disabling personal interest in the issues raised by a shareholder-plaintiff is disqualified from considering a demand if he is "beholden" to an interested director, or so under the influence of an interested director that his discretion would be sterilized. *Id.*

Although the Individual Defendants, including the Director Defendants, were made aware of the failure of management to adequately manage the investments of the fund, the board engaged the same poor performing manager to watch over the fund. Despite the fact that the RHY Fund was drastically underperforming similar funds, the Individual Defendants renewed the advisory agreement with MAM. Likewise, the Individual Defendants renewed the advisory agreements with MAM for all the other Regions Bank funds for which they served as directors. The Individual Defendants took this action despite the fact that each of the eighteen (18) Regions Bank funds were drastically underperforming their benchmarks. The corollary failure of these funds - all having MAM as their fund advisor - should have alerted the Individual Defendants of the need to consider replacement of MAM.

However, there is no evidence that the Individual Defendants ever considered replacing MAM as the fund manager after the malfeasance in connection with the funds was discovered. It is likely that the Individual Defendants were so beholden to their parent company, Regions Bank, that they were simply unable to choose any fund advisor other than MAM, despite the multitude of

-24-

"red flags" concerning MAM's management of the funds.  Defendant McFadden was additionally

beholden to Regions Bank during his tenure as director of the RHY fund because his company,

McFadden Communications, LLC, derived substantial revenues from Regions Bank and its

subsidiaries.  The Individual Defendants judgment was corrupted by the fact that they were beholden

to Regions Bank as demonstrated by their unwavering commitment to MAM as the Fund's advisor

despite numerous indications of malfeasance and mismanagement of the funds by MAM.  Therefore,

the Individual Defendants, including the Director Defendants were so controlled that demand upon

them would have been futile.

  **E.**  **Exculpatory Provisions and the ICA Do Not Shield The Defendants From Liability**

  Pursuant to the Investment Company Act of 1940, exculpation under a company's articles

of incorporation does not apply where the directors commit "willful malfeasance, bad faith, gross

negligence or reckless disregard of the duties involved in the conduct of his office."  15 U.S.C. §

80(a)-17(h).  The derivative claims asserted by Plaintiff and the class action claims are based on the

Director Defendants' knowledge, gross negligence and reckless disregard of their fiduciary duties.

Thus, the exculpatory provisions of the RHY Fund's Articles of Incorporation provide no shield to

the Defendants from liability.

  **F.**  **The Facts Concerning The Defendants' Exodus From The RHY Fund Demonstrate Demand Futility**

  At the time Plaintiff filed her Complaint, the Director Defendants were committed to a course

of action that would remove themselves from their responsibilities as directors, including responding

to a demand in good faith. Having already been sued individually in numerous class action and

derivative lawsuits, the Director Defendants focused their attention on terminating their fiduciary

responsibilities to escape all future oversight responsibility for the RHY Fund. This conduct, while unbeknownst to Plaintiff at the time this action was filed, did not allow the parties the reasonable prospect of "meaningful pre-litigation alternative dispute resolution." *See Werbowsky,* 766 A.2d at 619 (the demand requirement represents a "chance at meaningful pre-litigation alternative dispute resolution"). The Director Defendants' conduct indicates that they would certainly be unwilling to postpone their planned mass exodus in order to oversee long-term litigation against Defendants, including themselves. Even if Plaintiff made a demand, the Director Defendants placed themselves in a position that did not allow them to respond to a demand in good faith.

## II.    PLAINTIFF STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED

In considering a motion to dismiss, the facts alleged in the Complaint are treated as true and viewed in the light most favorable to the party seeking relief. To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face," *Hensley Mfg. v. ProPride, Inc.*, 2009 U.S. App. LEXIS 19797 (6th Cir. Mich. 2009)(citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009)).

Moreover, a motion to dismiss is not a device for testing the truth of what is asserted or for determining whether the plaintiff has any evidence to back up what is in the complaint. *See Summers v. United Rubber, Cork, Linoleum & Plastic Workers, Local Union No. 779*, 1994 U.S. Dist. LEXIS 18195 (M.D. Tenn. Jan. 13, 1994). For indeed, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Summers v. United Rubber, Cork, Linoleum & Plastic Workers, Local Union No. 779*, 1994

-26-

U.S. Dist. LEXIS 18195 (M.D. Tenn. Jan. 13, 1994)(quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)).  Defendants' denials of liability are immaterial at this juncture.

Here, the Complaint alleges in great detail Defendants' breaches of fiduciary dutes and the reasons why these breaches are actionable despite the exculpation clause in RHY Fund's Articles of Incorporation.  *See, supra,* Point I., E.  Likewise, Plaintiff has alleged that all the Defendants who signed RHY Fund's Registration Statements, Prospectuses, and other public filings pursuant to which the Fund was sold to the public that contained untrue statements of material facts, omitted to state other facts necessary to make the statements not misleading, and omitted to state material facts are held strictly liable under Section 11 of the Securities Act.

## CONCLUSION

For all the foregoing reasons, the Defendants' motions to dismiss should be denied.[10]

Dated: September 18, 2009                     Respectfully Submitted,

                                              **DRESCHER & SHARP, P.C.**


                                              By:     /s/ Kevin H. Sharp
                                              Kevin H. Sharp
                                              **Drescher & Sharp, P.C.**
                                              1720 West End Avenue, Suite 300
                                              Nashville, TN.  37212
                                              (615) 425-7111
                                              ksharp@dsattorneys.com

---

[10]  In the unlikely event the Court perceives any deficiencies in the Complaint, Plaintiff respectfully requests leave to replead.  To justify a denial of such leave to amend, it must appear to the Court that the amendment is futile, offered in bad faith, prejudicial, or otherwise contrary to the interests of justice. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

-27-

Randall K. Pulliam
Marcus N. Bozeman
James L. Kauffman
**Carney Williams Bates**
   **Bozeman & Pulliam, PLLC**
11311 Arcade Drive, Suite 200
Little Rock, AR. 72212
(501) 312-8500
rpulliam@carneywilliams.com
mbozeman@carneywilliams.com
jkauffman@carneywilliams.com


*Attorneys for Derivative Plaintiff
Rebecca Ryan*

## <u>CERTIFICATE OF SERVICE</u>

  I, Kevin H. Sharp, certify that a true and correct copy of the foregoing document was sent to the following persons on this 18th day of September via electronic mail:

Michael A. Brady
Shepard D. Tate
Bass Berry & Sims PLC
100 Peabody Place, Suite 900
Memphis, TN 38103

Michael L. Dagley
Matthew M. Curley
W. Brantley Phillips, Jr.
Bass Berry & Sims PLC
315 Deaderick Street, Suite 2700
Nashville, TN 37238

Kevin C. Logue
Asa R. Danes
Paul, Hastings, Janofsky & Walker, LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022

Jeffrey B. Maletta
K&L Gates, LLP
1601 K. Street, NW
Washington, DC 20006

        /s/  Kevin H. Sharp