## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## MEMPHIS DIVISION

| | | |
|---|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) | MDL Docket No. 2009 |
| | ) | **PLAINTIFF REBECCA RYAN'S MOTION** |
| This Document Relates to: | ) ) | **(INCLUDING MEMORANDUM) FOR LEAVE TO FILE SURREPLY BRIEF** |
| | ) | **(INCLUDING CERTIFICATION OF** |
| *Ryan v. Morgan Asset Management, Inc.,* No. 2:08-cv-02162-SMH-dvk | ) ) | **CONSULTATION)** |
| | ) | |
| | ) | |

Plaintiff, Rebecca Ryan ("Plaintiff"), respectfully seeks the Court's leave to file a surreply brief in order to respond to Defendants Jack R, Blair, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, Archie W. Willis, III, and Albert C. Johnson's (collectively "the Director Defendants"), Defendants Allen B. Morgan, Jr., J. Kenneth Alderman (collective with the Director Defendants as the "Individual Defendants"), and Morgan Asset Management, Inc.'s ("MAM" collectively with the Individual Defendants as the "Defendants"), and nominal Defendant Helios Multi-Sector High Income Fund, Inc.'s ("Nominal Defendant") recently-filed Reply Briefs in Support of Their Motions to Dismiss.

The Reply Briefs filed by the Defendants and the Nominal Defendant contain new information and charges, which need to be addressed and explained by Plaintiff. Plaintiff's proposed surreply, which is attached, does not exceed the Court's standing limit of twenty pages.

**LOCAL RULE 7.2 CERTIFICATE OF CONSULTATION**

Pursuant to the Court's Local Rule 7.2, the undersigned hereby certifies that before filing of the foregoing Motion on October 22, 2009, counsel for Plaintiff, James L. Kauffman, consulted with counsel for Defendants, Matthew M. Curley, who object to the Motion.

Respectfully Submitted,

Dated: October 26, 2009          BY: /s/ Kevin H. Sharp
                                 Kevin H. Sharp
                                 **Drescher & Sharp, P.C.**
                                 1720 West End Avenue, Suite 300
                                 Nashville, TN.  37212
                                 (615) 425-7111


                                 J. Allen Carney
                                 Randall K. Pulliam
                                 James L. Kauffman
                                 **Carney Williams Bates**
                                    **Bozeman & Pulliam, PLLC**
                                 11311 Arcade Drive, Suite 200
                                 Little Rock, AR. 72212
                                 (501) 312-8500


                                 *Attorneys for Derivative Plaintiff*
                                 *Rebecca Ryan*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**MEMPHIS DIVISION**

| | | |
|---|---|---|
| _____ | ) | |
| IN RE REGIONS MORGAN KEEGAN | ) | |
| SECURITIES, DERIVATIVE and ERISA | ) | MDL Docket No. 2009 |
| LITIGATION | ) | |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| *Ryan v. Morgan Asset Management,* | ) | |
| *Inc.,* No. 2:08-cv-02162-SMH-dvk | ) | |
| _____ | ) | |

**PLAINTIFF REBECCA RYAN'S SURREPLY BRIEF IN OPPOSITION TO THE**
**MOTIONS TO DISMISS OF DEFENDANTS JACK R. BLAIR, JAMES STILLMAN R.**
**MCFADDEN, W. RANDALL PITTMAN, MARY S. STONE, ARCHIE W. WILLIS,**
**ALBERT C. JOHNSON, ALLEN B. MORGAN, JR., J. KENNETH ALDERMAN,**
**MORGAN ASSET MANAGEMENT, INC., AND HELIOS MULTI-SECTOR HIGH**
**INCOME FUND, INC.**

J. Allen Carney
Randall K. Pulliam
James L. Kauffman
**Carney Williams Bates**
   **Bozeman & Pulliam, PLLC**
11311 Arcade Drive, Suite 200
Little Rock, AR. 72212
(501) 312-8500

Kevin H. Sharp
**Drescher & Sharp, P.C.**
1720 West End Avenue, Suite 300
Nashville, TN. 37212
(615) 425-7111

*Attorneys for Derivative Plaintiff*
*Rebecca Ryan*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.     Plaintiff has satisfied her burden to demonstrate demand was
futile under Maryland law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    There is no Maryland statute that controls director independence
and disinterest in derivative actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.   Delaware law, while not controlling, provides useful guidance to
the application of the demand futility standard.  The vast majority
of courts cited by Defendants are outside Maryland . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.   The Nominal Defendant's assertion that the issue of demand futility
is moot is erroneous and calls into question whether the Nominal
Defendant can investigate Plaintiff's claims in good faith . . . . . . . . . . . . . . . . . . . . 6

V.    Plaintiff states claims upon which relief may be granted . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                 <u>Page No.</u>

*Bell Atl. Corp. v. Twombly*,
      550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Caston v. Hoaglin*,
      2009 U.S. Dist. LEXIS 87541 (S.D. Ohio Sept. 23, 2009) . . . . . . . . . . . . . . . . . . . 4 n. 3

*Felker v. Anderson*, No. 04-0372-CV,
      2005 U.S. Dist. LEXIS 4236, 2005 WL 602974 (W.D. Mo. 2005) . . . . . . . . . . . . . . . 3, 4

*Herman & Maclean v. Huddleston*,
      459 U.S. 375 (U.S. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

*In re CNL Hotels & Resorts, Inc.*,
      2005 U.S. Dist. LEXIS 46629 (M.D. Fla. Sept. 13, 2005) . . . . . . . . . . . . . . . . . . . 4 n. 3

*Kanter v. Barella*,
      489 F.3d 170 (3d Cir. N.J. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Scalisi v. Fund Asset Mgmt., L.P.*,
      380 F.3d 133 (2d Cir. N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States ex rel. Bledsoe v. Cmty. Health Sys.*,
      501 F.3d 493 (6th Cir. Tenn. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Washtenaw County Emples. Ret. Sys. v. Wells Real Estate Inv. Trust, Inc.*,
      2008 U.S. Dist. LEXIS 53652 (N.D. Ga. Mar. 31, 2008) . . . . . . . . . . . . . . . . . . . 4 n. 3, 5

*Werbowsky v. Collomb*,
      766 A.2d 123 (Md. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:

Plaintiff Rebecca Ryan ("Plaintiff") hereby respectfully responds to the Reply Briefs of Defendants Jack R, Blair, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, Archie W. Willis, III, and Albert C. Johnson's (collectively "the Director Defendants"), Defendants Allen B. Morgan, Jr., J. Kenneth Alderman (collective with the Director Defendants as the "Individual Defendants"), and Morgan Asset Management, Inc.'s ("MAM" collectively with the Individual Defendants as the "Defendants"), and nominal Defendant Helios Multi-Sector High Income Fund, Inc.'s ("Nominal Defendant").

## PRELIMINARY STATEMENT

The Defendants and Nominal Defendant moved to dismiss Plaintiff's Complaint on essentially two basis: (1) that demand was not excused when Plaintiff filed her Complaint and (2) Plaintiff fails to state her claims with the required particularity.

On demand futility, the Maryland case *Werbowsky v. Collomb*, 766 A.2d 123 (Md. 2001) states that "[d]emand futility is, however, a preliminary issue that is discrete, that does not go to the merits of the underlying complaint, that needs to be resolved before the court undertakes to consider the merits, and, as the plaintiffs conceded, that is resolvable by the court, not a jury." *Werbowsky* 766 A.2d at 621. Further, "it is a perfect candidate for resolution pursuant to Maryland Rule 2-502." *Id.* Maryland Rule 2-502 provides:

> "If at any stage of an action a question arises that is within the sole province of the court to decide, whether or not the action is triable by a jury, and if it would be convenient to have the question decided before proceeding further, the court, on motion or on its own initiative, may order that the question be presented for decision in the manner the court deems expedient. In resolving the question, the court may

> accept facts stipulated by the parties, may find facts after receiving evidence, and may draw inferences from these facts. The proceedings and decisions of the court shall be on the record, and the decisions shall be reviewable upon appeal after entry of an appealable order or judgment."

*Werbowsky v. Collomb*, 362 Md. 581, 622 (Md. 2001).  As Defendants state in their Reply, the same demand futility issues that exist here are also present in *Landers v. Morgan Asset Mgmt, Inc.*, No. 2:08-cv-02260-SMH-dkv.[1]  Under the procedure articulated in Maryland Rule 2-502, the Court may consider any evidence, from either this case or *Landers,* in making its determination on demand futility.

In support of their Motion to Dismiss, the Nominal Defendant claims that the issue of demand futility is moot.  (Nominal Def. Reply Br. at 1-2.)  However, the Nominal Defendant makes no indication of any action that it has taken that would render demand moot, other than the vague assertion that it is "currently conducting an internal investigation related to this action and the separate derivative action [Landers]." (Nominal Def. Reply Br. at 1.)  The Nominal Defendant cites no caselaw that supports its position and provides no further detail on this "investigation."

On the issue of pleading particularity, Defendants try ineffectively to persuade this Court into applying the "sounds in fraud" doctrine to Plaintiff's claims. (MAM Reply Br. at 8-9.)  However, Plaintiff's derivative claims allege gross mismanagement, waste, unjust enrichment, abuse of control, and breaches of fiduciary duties, and as such, do not raise any issues related to fraud.  Likewise, Plaintiff's claims based on Section 11 of the Securities Act of 1933 do not "sound in fraud" because Section 11 claims do not require a proving of scienter - even innocent misstatements in the Registration Statement would be actionable against all persons responsible for those misstatements.

---

[1]  Plaintiff in *Landers* recently filed an extensive Amended Complaint with this Court (Docket Entry No. 46), which Plaintiff hereby incorporates by reference.

2

*Herman & Maclean v. Huddleston*, 459 U.S. 375, 382 (U.S. 1983)("Liability against the issuer of a security is virtually absolute, even for innocent misstatements.")

## ARGUMENT

**I.    Plaintiff has satisfied her burden to demonstrate demand was futile under Maryland law.**

In support of their argument that Plaintiff should have made a demand, Defendants claim that Maryland's demand futility exception essentially amounts to a universal demand requirement. (MAM Reply Br. at 2-3.)  This assertion ignores the plain language in *Werbowsky*, which states "[t]here is much to be said for the ABA/ALI approach [requiring universal demand], but, unlike the Pennsylvania court, we are not prepared, at this point, to engraft it as part of our common law." *Werbowsky v. Collomb*, 766 A.2d 123, 143 (Md. 2001).[2]  In a similar argument, Defendants assert that Plaintiff cannot meet the demand futility requirement simply because a majority of the courts that have applied the Maryland demand futility requirement articulated in *Werbowsky* have failed to find demand as futile.  (MAM Reply Br. at 3-4.)  If this argument were taken by all courts applying *Werbowsky*, Maryland's demand futility exception would essentially disappear and be replaced by a de-facto universal demand requirement, a result expressly rejected by *Werbowsky*.

As briefly stated in Defendants' Reply, *Felker v. Anderson*, No. 04-0372-CV, 2005 U.S. Dist. LEXIS 4236, 2005 WL 602974 (W.D. Mo. 2005) reviewed demand futility under Maryland law and found that demand was futile. (MAM Reply Br. at 3.)  The *Felker* case held that the following allegations taken together were sufficient to establish demand futility under Maryland law:

---

[2]  The *Werbowsky* court further explained that a universal demand requirement "constitutes a radical departure from our current common law" and as such, "this is a matter that should be subjected to legislative hearings."  *Werbowsky*, 766 A.2d at 143.

3

"(1) that a majority of directors participated in, approved, or permitted the wrongs alleged; (2) that a majority of the directors had a responsibility and obligation to assure that all press releases and filings of SEC reports were accurate and that oversight procedures were in place; (3) that directors have been forced to sue themselves or other persons with whom they have had business or personal relationships; (4) that the acts complained of constituted violations of state law and fiduciary duties; (5) that the directors' actions had impaired the board's ability to exercise business judgment; (6) that some of the directors are currently defendants in securities class actions arising out of the wrongdoing alleged and stand to lose in those suits if they were to bring suit against themselves; (7) that the company has been and will continue to be exposed to losses; (8) that directors would not bring suit against themselves for fear of exposing their own negligence and misconduct; and (9) that directors' insurance policy likely precluded coverage if the directors initiated a lawsuit against themselves."

*Felker*, 2005 U.S. Dist. LEXIS 4236, 2005 WL 602974, at *3.[3]  In the instant case, Plaintiff made the same allegations as those before the district court in *Felker* to demonstrate that demand was futile.  Additionally, Plaintiff alleges that demand was futile because of the Director Defendants' planned exodus from the Board and their duties. (Pl.'s Opp. at 13-15.)  Because of the planned action of the Director Defendants, even if Plaintiff had made a demand, there was no time for the board to properly consider Plaintiff's claims.  As such, demand would have not yielded any meaningful pre-litigation dispute resolution.  Telling, none of the Defendants attempted to counter this argument or even address how demand could have been considered by a board predisposed to exodus from their duties.

---

[3] While the Defendants assert that the district court's decision in *Felker* was criticized by two courts, *Washtenaw County Emples. Ret. Sys. v. Wells Real Estate Inv. Trust, Inc.*, 2008 U.S. Dist. LEXIS 53652 (N.D. Ga. Mar. 31, 2008) and *In re CNL Hotels & Resorts, Inc.*, 2005 U.S. Dist. LEXIS 46629 (M.D. Fla. Sept. 13, 2005), they fail to address the recent application of the *Felker* decision by the district court in *Caston v. Hoaglin*, 2009 U.S. Dist. LEXIS 87541 (S.D. Ohio Sept. 23, 2009).  Although the *Caston* district court found Plaintiff failed to plead demand futility under Maryland law, it observed, "the particularity of pleading in *Felker* went beyond that seen in the instant case." *Caston*, 2009 U.S. Dist. LEXIS 87541 at *15.

II.   **There is no Maryland statute that controls director independence and disinterest in derivative actions.**

MAM and Individual Defendants erroneously assert in their Reply Memorandum that Plaintiff "glaringly" fails to address § 2-405.3 that "controls the Court's determination of whether a director is independent and capable of considering demand in the demand futility context." (MAM's Reply Br. at 4.)  This identical argument was asserted and rejected by the court applying Maryland law in *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133 (2d Cir. N.Y. 2004).  Defendants argument ignores that Maryland has no statute specifically related to derivative actions.  *Scalisi*, 380 F.3d at 139.  Further, Maryland Code  § 2-405.3, cited by Defendants as controlling, only applies to related party transactions and has no bearing on independence and disinterest in derivative actions. *Scalisi*, 380 F.3d 133, 139 n10 ("This particular statute is not directed specifically to derivative actions (because Maryland has no statute or court rule governing such actions), but rather to related party transactions or other issues under state corporate law.") There is no Maryland statute that governs derivative claims and the statute cited by Defendants only applies to related party transactions.

III.   **Delaware law, while not controlling, provides useful guidance to the application of the demand futility standard. The vast majority of courts cited by Defendants are outside Maryland**

Defendants erroneously claim that *Werbowsky* rejects the application of Delaware law in its demand futility analysis. To the contrary, the *Werbowsky* standard is based on the guidance from Delaware law on demand futility. *Washtenaw County Emples. Ret. Sys.*, 2008 U.S. Dist. LEXIS 53652 at *34 (N.D. Ga. Mar. 31, 2008) ("with respect to issues of corporate law, Maryland courts often look to Delaware caselaw) citing generally *Werbowsky*, 766 A.2d at 143 (noting respect

properly accorded Delaware decisions on corporate law.)  As such, analysis of Delaware law can provide this Court with guidance on the application of the *Werbowsky* standard, especially in light of the fact that very few Maryland courts that have applied the *Werbowsky* standard.[4]

The Defendants erroneously assert that guidance from Delaware law is irrelevant and useless to this Court's analysis of the futility of demand.  Although the Maryland demand futility standard may be more strict that Delaware, it follows that the evidence and allegations that would satisfy Delaware's demand futility exception may also satisfy Maryland's demand futility exception. Plaintiff does not argue that the Delaware standard on demand futility should apply.  However, where there is a lack of guidance from Maryland courts, a comparison to more exhaustive demand futility caselaw in Delaware is warranted.

**IV.   The Nominal Defendant's assertion that the issue of demand futility is moot is erroneous and calls into question whether the Nominal Defendant can investigate Plaintiff's claims in good faith.**

The Nominal Defendant baldly asserts that this Court's decision on demand futility is moot because of the investigation that the current board is allegedly performing.  (Nominal Def. Br. at 1.) However, the Nominal  Defendant has provided no detail on this supposed investigation, aside from indicating that the board has retained outside counsel to advise it on these claims.  (Id.)  The Nominal Defendant cites no law to support  its assertion, and has made no statement indicating that the board has taken any affirmative action that would render the issue of demand futility or

_____

[4] Of the fifteen courts cited by Defendants as following and analyzing *Werbowsky*, only one, *Sekuk Global Enters. Profit Sharing Plan v. Kevinides*, is a Maryland court.  Telling, Defendants rely almost exclusively on decisions from district courts outside Maryland trying to interpret the *Werbowsky* standard. Considering the lack of Maryland law to provide guidance of the application of *Werbowsky,* analysis of Delaware law- the law upon which *Werbowsky* is based - is logical and necessary.

Plaintiff's derivative claims moot.

If the board truly wanted to investigate Plaintiff's claims, the correct procedure would be to initiate some action, such as the formation of a Special Litigation Committee, to investigate Plaintiff's claims. *See e.g. Werbowsky*, 362 Md. at 619 ("they [the Board] may choose to seek the advice of a special litigation committee of independent directors, ***which has become a common practice***, or they may decide, as a business matter, to accede to the demand rather than risk embarrassing litigation.") (emphasis added). However in the instant case, the Nominal Defendant has failed to take any such action.  Further, The Nominal Defendant's attempt to dismiss Plaintiff's claims prior to fully conducting its investigation suggests that the Nominal Defendant's board is predisposed to ignore Plaintiff's claims.  For the Nominal Defendant to recommend dismissal before its investigation is complete calls into question whether any such investigation can be conducted in good faith.

## V.   Plaintiff states claims upon which relief may be granted.

On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 502 (6th Cir. Tenn. 2007) citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To survive dismissal, the complaint need only plausibly suggest that the [plaintiff] has a right to relief, raising the possibility above a "speculative level." *Bell Atl. Corp.*, 550 U.S. at 555.  Once a claim has been stated adequately, "it may be supported by showing any set of facts consistent with the allegations of the complaint." *Id.* at 563.

Defendants essentially concede that Plaintiff's complaint meets the notice pleading standards

of Rule 8(a), but argue that the Plaintiff's complain must be dismissed for failure to meet the

heightened standards of Rule 9(b).  Although in the shareholder derivative context, allegations

pertaining to demand futility must be pled with particularity, other non-demand claims that do not

sound in fraud are usually held by courts to be subject only to Rule 8(a)'s notice pleading standard.

*Kanter v. Barella,* 489 F.3d 170, 176 (3d Cir. N.J. 2007).  As stated by *Kanter*,

> "But there are three notable exceptions to notice pleading that mandate a heightened
> standard requiring that facts be pleaded with particularity: (1) pleading fraud, Fed.
> R. Civ. P. 9(b), the "who, what, when, where, and how" of the events at issue,
> *Burlington Coat Factory*, 114 F.3d at 1422 (citation omitted); (2) pleading scienter
> under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b),
> foreclosing "boilerplate and conclusory allegations," *In re Rockefeller Ctr. Props.,
> Inc. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (citation omitted); and (3) pleading
> demand futility in shareholder derivative suits under Fed. R. Civ. P. 23.1."

*Kanter v. Barella,* 489 F.3d at 176. Aside from the issue of demand futility, none of the exceptions

for applying Rule 9(b) apply to Plaintiff's claims.  As Defendants correctly point out, Plaintiff brings

her derivative suit based on gross mismanagement, abuse of control, unjust enrichment, waste of

corporate assets, breaches of fiduciary duties, and the reckless disregard that Defendants exhibited

in failing to adequately discharge their fiduciary duties.  (MAM Reply Br. at 8-9).[5]

 Likewise, Plaintiff's Section 11 claims do not sound in fraud. Section 11 allows purchasers

of a registered security to sue certain enumerated parties in a registered offering when false or

misleading information is included in a registration statement.  *Herman & Maclean v. Huddleston*,

459 U.S. 375, 382 (U.S. 1983) Further, "[t]he section was designed to assure compliance with the

disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play

---

[5] These allegations do warrant the heightened pleading requirements of Rule 9(b), nor have
Defendants raised any substantive arguments or cited any caselaw for the application of Rule 9(b),
other than the bald assertion that Plaintiff's complaint "sounds in fraud."

a direct role in a registered offering." *Id.*   If a plaintiff purchased a security issued pursuant to a Registration Statement, "he need only show a material misstatement or omission to establish his prima facie case." *Id.*   As the Supreme Court noted, "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements." *Id.* at 382. Defendants have identified nothing in Plaintiff's Section 11 claims that sound in fraud and would subject those claims to heightened pleading standards.

## CONCLUSION

For the reasons expressed here and Plaintiff's Opposition Brief (Dkt. No. 49), the Defendants' Motions to Dismiss should be denied.

Dated: October 26, 2009                    Respectfully Submitted,

**DRESCHER & SHARP, P.C.**

By:     /s/ Kevin H. Sharp
Kevin H. Sharp
**Drescher & Sharp, P.C.**
1720 West End Avenue, Suite 300
Nashville, TN.  37212
(615) 425-7111
ksharp@dsattorneys.com

Randall K. Pulliam
Marcus N. Bozeman
James L. Kauffman
**Carney Williams Bates**
   **Bozeman & Pulliam, PLLC**
11311 Arcade Drive, Suite 200
Little Rock, AR. 72212
(501) 312-8500
rpulliam@carneywilliams.com
mbozeman@carneywilliams.com
jkauffman@carneywilliams.com

9

*Attorneys for Derivative Plaintiff*
*Rebecca Ryan*

## CERTIFICATE OF SERVICE

I, Kevin H. Sharp, certify that a true and correct copy of the foregoing document was sent

to the following persons on this 26th day of October via electronic mail:

| | |
|---|---|
| Michael A. Brady | Kevin C. Logue |
| Shepard D. Tate | Asa R. Danes |
| Bass Berry & Sims PLC | Paul, Hastings, Janofsky & Walker, LLP |
| 100 Peabody Place, Suite 900 | Park Avenue Tower |
| Memphis, TN 38103 | 75 E. 55th Street, First Floor |
| | New York, NY 10022 |
| Michael L. Dagley | |
| Matthew M. Curley | Jeffrey B. Maletta |
| W. Brantley Phillips, Jr. | K&L Gates, LLP |
| Bass Berry & Sims PLC | 1601 K. Street, NW |
| 315 Deaderick Street, Suite 2700 | Washington, DC 20006 |
| Nashville, TN 37238 | |

                                  /s/      Kevin H. Sharp

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## MEMPHIS DIVISION

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) ) |
| | MDL Docket No. 2009 |
| This Document Relates to: | ) ) ) |
| *Ryan v. Morgan Asset Management, Inc.,* No. 2:08-cv-02162-SMH-dvk | ) ) ) |

### DECLARATION OF KEVIN H. SHARP

I, Kevin H. Sharp, declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am an attorney with the law firm Drescher & Sharp, P.C., 1720 West End Avenue, Suite 300, Nashville, TN. 37212.  I have been admitted to the bar of this court.  My firm and I represent Plaintiff Rebecca Ryan ("Plaintiff"), I submit this declaration in support of Plaintiff's Surreply Brief in Oppposition to Defendants' Motions to Dismiss.

2.      Attached as Exhibit A is a Proposed Order Granting Plaintiff's Motion for Leave to File a Surreply Brief.

3.      Attached as Exhibit B is a true and accurate copy of *Caston v. Hoaglin*, 2009 U.S. Dist. LEXIS 87541 (S.D. Ohio Sept. 23, 2009).

4.      I declare under penalty of perjury that the foregoing is true and correct.


Executed on October 26, 2009


/s/      Kevin H. Sharp_____

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**MEMPHIS DIVISION**

| | | |
|---|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) | MDL Docket No. 2009 |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| *Ryan v. Morgan Asset Management, Inc.,* No. 2:08-cv-02162-SMH-dvk | ) ) | |

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION**
**FOR LEAVE TO FILE SURREPLY BRIEF**

Before the Court is Plaintiff Rebecca Ryan's Motion for Leave to File Surreply Brief,

filed on October 26, 2009.  Good cause having been show, the Court GRANTS the motion.  The

Court hereby accepts the surreply brief served as an exhibit to Plaintiff's motion.

So ORDERED this _____ day of _____, 2009.

_____
Samuel H. Mays, Jr.
UNITED STATES DISTRICT JUDGE

# EXHIBIT B



LEXSEE 2009 U.S. DIST. LEXIS 87541

**RUSSELL E. CASTON, Plaintiff, -v- THOMAS E. HOAGLIN, et al., Defendants.**

**Case No. 2:08-cv-200**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION**

*2009 U.S. Dist. LEXIS 87541*

**September 23, 2009, Filed**

**PRIOR HISTORY:** *Caston v. Hoaglin, 2009 U.S. Dist. LEXIS 49591 (S.D. Ohio, June 12, 2009)*

**COUNSEL:** [*1] For Russell E. Caston, on behalf of Nominal Defendant Huntington Bancshares Incorporated, Plaintiff: Rex H Elliott, LEAD ATTORNEY, Charles Horne Cooper, Jr., Sheila P Vitale, Cooper & Elliott - 2, Columbus, OH; John C Camillus, Cooper & Elliott LLC, Columbus, OH; William B Federman, Federman & Sherwood, Oklahoma City, OK.

For Thomas E. Hoaglin, Donald R. Kimble, Marty E. Adams, David P. Lauer, Kathleen H. Ransier, Michael J. Endres, Raymond J. Biggs, Don M. Casto, III, John B. Gerlach, Jr., William J. Lhota, Gene E. Little, David L. Porteous, D. James Hilliker, Jonathan A. Levy, Marylouise Fennell, Gerard P. Mastroianni, Huntington Bancshares Incorporated, Nominal Defendant, Defendants: Robert Ward Trafford, LEAD ATTORNEY, Daniel William Costello, James A King, Porter Wright Morris & Arthur - 2, Columbus, OH; Hille R Sheppard, Kristen R Seeger, Walter C Carlson, PRO HAC VICE, Sidley Austin LLP, Chicago, IL.

**JUDGES:** GEORGE C. SMITH, UNITED STATES DISTRICT JUDGE. Magistrate Judge King.

**OPINION BY:** GEORGE C. SMITH

**OPINION**

**OPINION & ORDER**

Plaintiff Russell E. Caston, a shareholder of Huntington Bancshares, Incorporated ("Huntington"), brings this shareholder derivative action against Defendants Thomas E. Hoaglin, Donald [*2] R. Kimble, Marty E. Adams, David P. Lauer, Kathleen H. Ransier, Michael J. Endres, Raymond J. Biggs, Don M. Casto, III, John B. Gerlach, Jr., William J. Lhota, Gene E. Little, David L. Porteous, D. James Hilliker, Jonathan A. Levy, Marylouise Fennell, Gerard P. Mastroianni, and Huntington ("Defendants"), under Maryland common law for breach of fiduciary duties, abuse of control, gross mismanagement, and waste of corporate assets.

Defendants filed a motion to dismiss under *Federal Rule of Civil Procedure 23.1* (Doc. 54). Plaintiff filed a sealed memorandum in opposition to Defendants' motion to dismiss (Doc. 58). Defendants filed a reply in support of their motion to dismiss (Doc. 62). Plaintiff then asked for leave to file a sur-reply (Doc. 63), which the Court granted (Doc. 66). Defendants then filed a response to Plaintiff's motion for leave to file sur-reply (Doc. 64). On March 10, 2009, Plaintiff filed a sur-reply (Doc. 67). Defendants, having already responded to the merits of the sur-reply in their motion against it, did not respond.

The Court has jurisdiction pursuant to *28 U.S.C. § 1332(a)(2)* because the amount in controversy exceeds $ 75,000 and complete diversity exists between [*3] Plaintiff, who is from Oklahoma, and Defendants, who are from Ohio and Maryland. Venue is proper because Huntington is headquartered in the district. The parties agree that Maryland law applies to the matter. *See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)* (finding that federal courts must apply state substantive law).

For the reasons that follow, the Court **GRANTS** Defendants' motion to dismiss. (Doc. 54).

**I. FACTUAL BACKGROUND**

Plaintiff Russell E. Caston is a minority shareholder of Huntingon Bancshares, Incorporated ("Huntington").

Defendant Hoaglin is Huntington's President and Chief Executive Officer and the Chairman of Huntington's Board of Directors ("Board"). Defendants Biggs, Casto, Endres, Fennell, Gerlach, Hilliker, Lauer, Levy, Lhota, Little, Mastroianni, Porteous, and Ransier comprise the remaining members of the Board. Defendant Huntington is a multi-state diversified financial holding company. It serves as the holding company for The Huntington National Bank and provides financial products and services across the country through its regional banking offices and subsidiaries. (Compl. PP 5-6).

At a May 30, 2007 shareholders' meeting, Defendant Hoaglin announced that an [*4] acquisition of Sky Financial would result in significant earnings accretion in 2008. (Compl. P 9). As a result of this and other positive statements, Huntington's shareholders approved an acquisition of Sky Financial. (Compl. P 9). On July 1, 2007, the Board unanimously approved the acquisition for $ 3.3 billion, and Huntington announced the acquisition in a December 20, 2007 press release. (Compl. P 6). Plaintiff alleges that upon completion of the merger, Defendant Hoaglin again stated that the merger would be accretive to Huntington's earnings. (Compl. P 9).

In acquiring Sky Financial, Huntington also acquired a 17-year lending relationship between Sky Financial and Franklin, which included a $ 1.8 billion debt in the form of high-risk residential mortgage loans. (Compl. PP 6, 10). At the time of acquisition, Franklin had become a nationally recognized buyer of portfolios of residential mortgage loans, both first and second-lien loans, and real estate assets from a variety of United States financial institutions, including mortgage banks. Franklin specialized in subprime, second lien, and scratch and dent mortgages. [1] Before the acquisition, Franklin conducted its loan origination [*5] business through its wholly-owned subsidiary, Tribeca Lending Corp. (Compl. P 7).

> 1   Franklin originated and serviced primarily high-risk subprime residential mortgage loans to individuals with serious financial difficulties and whose documentation, credit histories, income, and other factors caused them to be classified as subprime borrowers, to whom conventional mortgage lenders often did not make loans. (Compl. P 7).

Plaintiff alleges that, as Sky Financial's successor in interest, Huntington acquired this $ 1.8 billion debt knowing, but not disclosing, that it: (1) did not have the ability to adequately stress test or value these high-risk mortgage products, (2) had previously decided not to acquire similar high-risk derivative loan products because it had been cautioned by regulators and its own trade desk of the toxic nature of these products, and (3) knew that its due diligence of these toxic mortgage loan products was inadequate. (Compl. P 9).

When the secondary market for subprime mortgages evaporated, these loans became toxic to Huntington. (Compl. P 7). On November 16, 2007, less than five months after the acquisition closed, Huntington "shocked its investors" when it reported [*6] disastrous 2007 fourth-quarter results and an anticipated charge of $ 300 million in order to "build the allowance for loan and lease losses in support of the Financial relationship." (Compl. P 11). Huntington revealed at that time that all $ 1.8 billion in loans to Franklin were being reassessed to more adequately determine their prospect of collectability. (Compl. P 11). On January 3, 2008, Huntington reported a restructuring of its existing lending relationship with Franklin, under which Huntington entered into a forbearance agreement with Franklin that would mature on May 15, 2009, resulting in a $ 300 million debt reduction to Franklin and a $ 1.2 billion increase in non-performing assets, representing Huntington's remaining loan to Franklin. (Compl. P 11).

Following release of the restructuring deal, Huntington's per-share price dropped from a closing price of $ 14.08 on January 3, 2008 to a closing price of $ 13.52, continuing to decline to a low closing price of $ 10.66 per share on January 18, 2008. (Compl. P 13).

On February 29, 2008, Plaintiff filed a complaint in the instant action (Doc. 2). Defendants filed a motion to dismiss under *Federal Rule of Civil Procedure 23.1* on [*7] May 2, 2008 (Doc. 23). In response, Plaintiff filed an amended complaint on September 12, 2008 (Doc. 45). In the amended complaint, Plaintiff alleges that between June 2006 and September 2008: (1) Defendants knowingly concealed material adverse facts regarding undisclosed mortgage-related losses which resulted from Huntington's acquisition of Sky Financial, including the amount of potentially uncollectible mortgage-related debt of Franklin; (2) Huntington lacked adequate internal and financial controls; (3) Huntington knowingly acquired and continued to hold high-risk financial instruments that Defendants knew could not be adequately valued or evaluated and which Defendants knew were a rapidly wasting asset; and (4) Defendants caused Huntington to issue false statements concerning its financial statements

and future business prospects. (Compl. P 14).

On November 10, 2008, Defendants filed a motion to dismiss under *Federal Rule of Civil Procedure 23.1*, arguing that Plaintiff failed to make a required pre-suit demand upon the Board or demonstrate demand futility with particularity. (Doc. 54). This motion has been fully briefed and is ripe for review.

For the reasons set forth in the Discussion [*8] Section, the Court finds that Defendants' motion to dismiss is meritorious.

## II. *RULE 23.1* AND MARYLAND'S DEMAND REQUIREMENT

*Federal Rule of Civil Procedure 23.1* requires that a plaintiff in a shareholder derivative suit "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors . . . and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." *Fed. R. Civ. P. 23.1*. *Rule 23.1* governs only the adequacy of the shareholder's pleadings and does not create a requirement that a shareholder make an effort to obtain the desired action from directors. *Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 96, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991)*.

Historically, the derivative lawsuit allowed an individual shareholder to enforce a corporate cause of action against those running the corporation. *Ross v. Bernhard, 396 U.S. 531, 534, 90 S. Ct. 733, 24 L. Ed. 2d 729 (1970)*. The purpose of the derivative action was to provide the individual shareholder with the means to protect company interests from "faithless directors and managers." *Cohen v. Beneficial Loan Corp., 337 U.S. 541, 548, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949)*. In order for a shareholder to usurp the corporation's power to control [*9] litigation, he must: (1) make a demand on the board to bring litigation, or (2) plead with particularity that a demand is futile. *Id. at 619-620*. These safeguards were intended to prevent abuse of the derivative remedy. *Ross, 396 U.S. at 534*. Ordinarily, it is only when demand is excused that the shareholder enjoys the right to initiate a derivative suit "in disregard of the directors' wishes." *Kamen, 500 U.S. at 96*.

When a shareholder brings a derivative suit under federal law, courts must apply the substantive law of the defendant corporation's incorporation state to determine whether the failure to make a demand is excused. *Id. at 97*. Huntington is incorporated in Maryland, and thus, Maryland law applies. *See id.* Under Maryland law, the power to bring and maintain litigation belongs to the

corporation's board of directors. *Werbowsky v. Collomb, 362 Md. 581, 766 A.2d 123, 142 (Md. 2001)*. In order to seize this power, a shareholder must demonstrate the futility of a demand by pleading sufficient facts, which, if true, would demonstrate that:

> (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally [*10] and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule. *Id. at 620*.

## III. DISCUSSION

Defendants argue that they are entitled to dismissal in their favor on Plaintiff's state common-law claims because Plaintiff has failed to plead with particularity why he failed to make a demand upon the Board before filing suit. (Defs.' Mot. to Dis. at 3). Plaintiff counters that under Maryland law, he is not required to make a demand under the futility exception. (Pl.'s Memo. in Opp. at 10).

After examination of Plaintiff's claim, the Court finds that Plaintiff has not met his burden of pleading either prong of Maryland's disjunctive, two-prong demand-futility test.

### A. Plaintiff Failed to Plead with Particularity That Making a Demand Would Have Caused Irreparable Harm to Huntington.

The Court finds that Plaintiff has failed to meet the first prong of the demand-futility exception.

As set forth above, in order to meet the first prong, a shareholder must plead with particularity that "a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to [*11] the corporation." *Werbowsky, 362 Md. at 620*.

Plaintiff alleges that delay in litigation "would undoubtedly inflict further harm" and that Defendants have already caused irreparable harm in the form of financial loss and securities litigation due to the alleged wrongdoings and loss to the company's "reputation and corporate image." (Pl.'s Mot. in Opp. at 10-11). Plaintiff further alleges that reputational loss has caused

3

Huntington to suffer from a "liar's discount, a term applied to stocks of companies who have misled the investing public," which in turn, will affect Huntington's future ability to raise capital. *Id*. Plaintiff does not explain how the making of a demand or the delay caused by awaiting a response to a demand might have caused irreparable harm.

Defendant counters that Plaintiff filed his action more than 10 months ago, has not pursued injunctive relief, and waited months after Defendants moved to dismiss his original complaint before filing an amended complaint, during which time Huntington's Board could have considered his demand. (Defs.' Rep. at 4). Defendants then rely on *Sekuk Global Enters. Profit Sharing Plan v. Kevinides*, No. 24-C-03-007496, 24-C-03007876, 24-C-03-008010, 2004 Md. Cir. Ct. LEXIS 20, 2004 WL 1982508, at *3 (Md. Cir. Ct. May 25, 2004) [*12] , for the proposition that Plaintiff cannot create his own irreparable harm by causing delay in the litigation.

Courts applying Maryland law have not defined "irreparable harm" in the context of shareholder derivative litigation. But in evaluating requests for injunctive relief, which also require a showing of "irreparable harm" caused by delay in awaiting a response, the Maryland Court of Appeals has determined that irreparable harm exists when a plaintiff pleads that "substantive and positive injury" and "monetary damages are difficult to ascertain or are otherwise inadequate." *Chestnut Real Estate P'ship v. Huber, 148 Md. App. 190, 205, 811 A.2d 389 (2002)* (finding that such a standard applies when proving irreparable harm in obtaining an injunction).

Additionally, in *Sekuk*, a Maryland circuit court held that when a shareholder in a derivative lawsuit creates his own delay, he may not allege that harm occurring during the delay he caused constitutes substantive and positive injury. *Sekuk, 2004 Md. Cir. Ct. LEXIS 20, 2004 WL 1982508, at *3*. In *Sekuk*, the court determined that Plaintiffs created their own substantive and positive injury by waiting more than five weeks to bring [*13] suit. *2004 Md. Cir. Ct. LEXIS 20, [WL] at *4*.

Here, Plaintiff has not pleaded with particularity the substantive and positive injury that would result from a demand or the delay in awaiting a response from a demand. *See Chestnut, 148 Md. App. at 205*. Plaintiff's broad allegations do not address with particularity the reasons why demand or delay in awaiting response to a demand might cause substantive and positive injury to the company. *See Werbowsky, 362 Md. at 620*. Claims of financial harm resulting from Defendants' alleged past actions and speculative claims of reputational harm yet to

come do not satisfy the pleading requirement of substantive and positive injury caused by a demand or a delay in awaiting response to a demand. *See Werbowsky, 362 Md. at 620*. Moreover, Plaintiff cannot meet the first prong of the demand-futility test by listing harms that occurred during delay he caused by waiting four months to file his amended complaint. *See Sekuk, 2004 Md. Cir. Ct. LEXIS 20, 2004 WL 1982508 at *3*.

Thus, the Court finds that Plaintiff has failed to plead with particularity that a demand would have caused irreparable harm to Huntington, and therefore, has not met the first prong of the demand-futility test under Maryland law.

**B. Plaintiff** [*14] **Failed to Plead with Particularity that a Majority of the Directors Could Not Reasonably be Expected to Respond to a Demand in Good Faith**.

Having failed to meet the first prong of the demand-futility exception, Plaintiff must alternatively demonstrate, "in a very particular manner" that "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky, 766 A.2d at 144*. The Court finds that Plaintiff has failed to do so.

Plaintiff argues that demand is futile as to the entire Board, based upon allegations that Board members were aware of the danger of acquiring subprime-mortgage debt, that Board members participated in the alleged wrongdoings, that Board members were conflicted or committed due to benefits obtained from Huntington, and that Board members had previously existing relationships with Sky Financial. (Pl's Mot. in Opp. at 12-17). Defendants counter that in *Werbowsky, 766 A.2d at 143*, the Maryland Court of Appeals rejected Plaintiff's reasoning and that none of Plaintiff's allegations are sufficient [*15] to excuse demand. (Defs.' Rep. at 4). Plaintiff sur-replies that *Felker v. Anderson, No. 04-0372-CV-W-ODS, 2005 U.S. Dist. LEXIS 4236, 2005 WL 602974, at *3 (W.D. Mo. Feb. 11, 2005)*, in which a Missouri district court applying Maryland law found demand to be futile, supports his case. (Pl's Sur. at 1). Defendants respond that *Felker* should be rejected as an improper application of Maryland law. (Defs.' Res. at 2).

The Court agrees with Defendants that *Felker* does not save Plaintiff's Complaint. Though *Werbowsky* leaves open the possibility that demand-futility may be established, the particularity of the pleading in *Felker* went beyond that seen in the instant case. *See* Amended

4

Complaint of Plaintiff at P 29, *Felker v. Anderson*, 2004 WL 5502149 (W.D. Mo. Oct. 11, 2004).

In *Felker*, the court held the following allegations sufficient to establish demand-futility under Maryland law: (1) that a majority of directors participated in, approved, or permitted the wrongs alleged; (2) that a majority of the directors had a responsibility and obligation to assure that all press releases and filings of SEC reports were accurate and that oversight procedures were in place; (3) that directors have been forced to sue themselves [*16] or other persons with whom they have had business or personal relationships; (4) that the acts complained of constituted violations of state law and fiduciary duties; (5) that the directors' actions had impaired the board's ability to exercise business judgment; (6) that some of the directors are currently defendants in securities class actions arising out of the wrongdoing alleged and stand to lose in those suits if they were to bring suit against themselves; (7) that the company has been and will continue to be exposed to losses; (8) that directors would not bring suit against themselves for fear of exposing their own negligence and misconduct; and (9) that directors' insurance policy likely precluded coverage if the directors initiated a lawsuit against themselves. *Felker*, 2005 U.S. Dist. LEXIS 4236, 2005 WL 602974, at *3.

*Felker*, however, may conflict with the most recent decisions by the Maryland Court of Appeals and other courts interpreting Maryland law. *See e.g. Werbowsky*, 766 A.2d at 145; *Danielewicz v. Arnold*, 137 Md. App. 601, 769 A.2d 274, 291 (2001) (applying *Werbowsky* to a closely-held corporation); *In re CNL Hotels & Resorts, Inc. Sec. Litigation*, No. 604CV1231ORL31KRS, 604CV1341ORL19JGG, 2005 U.S. Dist. LEXIS 46629, 2005 WL 2219283, at *5 n. 18 (M.D. Fla. Sept. 13, 2005); [*17] *Washtenaw County Employees' Ret. Sys's v. Wells Real Estate Investment Trust, Inc.*, 2008 U.S. Dist. LEXIS 53652, 2008 WL 2302679, at *14 (N.D. Ga. Mar. 31, 2008).

In *Hotels & Resorts*, a Florida district court noted that *Felker* was not persuasive for two reasons: (1) it was not clear how to reconcile *Felker* with *Werbowsky's* "clear admonition" that a court should not excuse demand simply because a majority of the directors approved or participated in the challenged transaction; and (2) the court was not able to apply *Felker* because the plaintiffs in *Hotels & Resorts* did not provide any factual support as to how participation in alleged wrongdoings rendered directors unable to respond to a demand in good faith, despite the fact that they had previously worked for a company with whom the defendant corporation still conducted business. *Hotels & Resorts*, 2005 U.S. Dist. LEXIS 46629, 2005 WL 2219283, at *5 n. 18.

Moreover, because *Werbowsky* does not preclude a party from establishing demand futility, the *Felker* decision can be distinguished based upon the uniquely particular pleading seen in that case. *See Werbowsky*, 766 A.2d 143 (declining to eliminate altogether the futility exception). *Felker* held that demand is excused when a plaintiff pleads [*18] with particularity directors' false and misleading statements to the detriment of the corporation. *See* Amended Complaint of Plaintiff at P 29, *Felker v. Anderson*, 2004 WL 5502149 (W.D. Mo Oct. 11, 2004). The *Felker* plaintiffs alleged that defendants did not reveal that their business model was unlawful, that the company actually exaggerated the number of its branches in existence by 120 percent in Nevada, and that the company grossly overstated expansions because none of the company's Texas offices were licensed to do business. *Id.* The court determined that if these facts were proven, plaintiff would be entitled to relief and waived the demand requirement. *Felker*, 2005 U.S. Dist. LEXIS 4236, 2005 WL 602974, at * 4. Although it remains open that similarly plead facts may satisfy the demand-futility exception under Maryland law, to the extent that *Felker* may conflict with the Maryland Court of Appeals' holding in *Werbowsky*, this Court, like the other courts that have considered *Werbowsky*, finds it to be unpersuasive. [2]

> 2   In *Washtenaw*, a Georgia district court rejected *Felker* because it was the only post-*Werbowsky* case reviewing demand futility under Maryland law to find that demand was futile and because it ignored [*19] the Maryland Court of Appeals' findings in *Werbowsky*. *Washtenaw*, 2008 U.S. Dist. LEXIS 53652, 2008 WL 2302679, at *14.

Thus, this Court evaluates Plaintiff's allegations of demand-futility under the standard articulated in *Werbowsky*: his complaint must plead with particularity that "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky*, 766 A.2d at 144.

The business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best

5

interests of the company." *Id. at* 138; *see also Md. Code Ann. (Corps. & Ass'ns) § 2-405.1(a) & (c)*. The business judgment rule assumes that directors act properly and in the best interest of the corporation. *Werbowsky, 766 A.2d at* 144. Directors' control over corporate affairs "should not be impinged based on non-specific or speculative allegations of wrongdoing." *Id*. Minority shareholders, "bent simply on mischief," should not be permitted to "file derivative   [*20] actions not to correct abuse as much to coerce nuisance settlements." *Id*. [3]

> 3   The *Werbowsky* court, in a footnote, explained the problems with even allowing for the possibility of demand-futility in a derivative suit. "The futility exception eliminates any chance at meaningful pre-litigation alternative dispute resolution. It also virtually assures extensive and expensive judicial wrangling over a peripheral issue that may result in preliminary determinations regarding director culpability that, after trial on the merits, turn out to be unsupportable. If a demand is made and refused, that decision, and the basis for it, can be reviewed by a court under the business judgment rule standard." *Werbowsky 766 A.2d at* 144 n. 10.

A director is not conflicted or committed simply because the alleged wrongdoers constitute a majority of the board of directors. *Werbowsky, 766 A.2d at* 130 (overruling *Parish v. Maryland & Virginia Milk Producers Ass'n, 250 Md. 24, 242 A.2d 512, 545 (1968)* (holding that demand is futile when a plaintiff alleges that a majority of directors were themselves involved in the wrongdoing)). "To the extent our holding in [*Parish*] could be read as a ruling that demand futility is established [*21] when the pleadings simply allege that a majority of the board participated in the wrongdoing, . . . such a reading was overbroad, as it would make the prerequisite of a demand or pleading demand futility meaningless." *Werbowsky, 766 A.2d at* 130.

A board member is not conflicted or committed simply because he is involved in the offending transaction. *Kamen v. Kemper, 939 F.2d 458 (7th Cir. 1991) cert. denied 502 U.S. 974, 112 S. Ct. 454, 116 L. Ed. 2d 471 (1991)* (applying *Kamen, 500 U.S. at* 109). [4] In *Kamen*, the Seventh Circuit found that the mere fact that directors were paid by the company for their services was not enough to excuse demand under Maryland law as interpreted by the Supreme Court. *See id. at* 460. If shareholders could make such allegations, "the demand rule would be negated--for almost all directors receive fees, and independent directors come to a board after being slated by corporate insiders." *Id*. The court also

determined that alleging mere involvement to avoid demand does not meet the particularity requirement of *Rule 23.1*. *Id*.

> 4   The Maryland Court of Appeals in *Werbowsky* noted that it agreed with the Seventh Circuit's holding in *Kamen. Werbowsky, 766 A.2d at* 143.

Further, general allegations that directors   [*22] are conflicted or committed to the transaction based on a desire to retain directorships, good relationships with other board members, and good business relationships between the involved corporation and outside corporations with which directors may be affiliated are insufficient. *Werbowsky, 766 A.2d at* 145. In *Werbowsky*, the court determined that the shareholder did not present evidence that the board members' service as members would have caused them to reject a demand. *Id. at* 146.

Rather, a shareholder must make demand on the Board of Directors even if a board member might gain from the transaction through his personal relationships. *Danielewicz, 769 A.2d at* 291. Indeed, the *Danielewicz* court stated that relying upon such relationships to plead demand-futility relies merely upon "conjecture and speculation." *Id*. In *Danielewicz*, the plaintiff sued Board Member A for withholding information from the plaintiff, who had been a majority shareholder of company stock held in future interests at the time of the discrepant transaction. *Id. at* 279. Board Member B was Board Member A's son and a beneficiary of a trust in Board Member A's name that Plaintiff claimed had gained from the transaction.   [*23] *Id. at* 290. The complaint did not specify how many shares Board Member B was set to gain from the transaction or whether the interests he would hold would allow for present possession of the shares. *Id. at* 292. Moreover, the court found that the shareholder could not rely upon the family relationship to plead demand futility. *Id*. "This Court has certainly seen its share of cases whereby families have literally been torn apart over financial disagreements." *Id. at* 293.

Moreover, a board member is not conflicted or committed simply because the company's insurance coverage will not cover a lawsuit instituted by directors against themselves. *See Werbowsky, 766 A.2d at* 130 (upholding the circuit court's application of a Delaware case to determine to reject the theory that a lack of insurance coverage for named directors can excuse a demand).

In the instant case, the Board is composed of sixteen directors, and the Court finds that Plaintiff has failed to sufficiently plead that any of these directors is conflicted or committed for the purposes of Maryland's demand-

futility analysis. The Court finds that Plaintiff has not indicated with particularity why any Defendants could not reasonably [*24] have been expected to respond to a demand in good faith and within the ambit of the business judgment rule. *See Werbowsky*, 766 A.2d at 144.

### 1. Defendant Hoaglin

Hoaglin served as Huntington's CEO and Chairman of the Board. (Pl.'s Memo. in Opp. at 13). Plaintiff alleges that in 2005, the SEC filed suit against Huntington and Hoaglin, alleging financial reporting fraud in connection with financial statements filed for fiscal years 2001 and 2002 and that Hoaglin has "a propensity to use sham accounting practices." (Pl.'s Memo. in Opp. at 13). Plaintiff further alleges that Hoaglin "simply lied to the investing public" in casting the Sky Financial acquisition in a positive light. *Id*. Plaintiff also generally alleges that Hoaglin "actively participated in the negotiations and due diligence review that led to the Sky Financial Acquisition" and that he "attended several of the Board's Market Risk subcommittee meetings wherein he was put on notice of the collapsing subprime market." (Compl. P18). Furthermore, Plaintiff alleges that Hoaglin would not review a demand in good faith "because his employment with Huntington is his principal professional occupation, pursuant to which he received and [*25] continues to receive substantial compensation and other benefits." (Pl.'s Memo. in Opp. at 12). Finally, Plaintiff alleges that Hoaglin breached his fiduciary duties by lying to the public, for example, by stating on December 20, 2006 that "the Company expected that the transaction would be immediately accretive to 2007 earnings."

Defendant counters that Plaintiff cites no case holding that his attacks on Defendant Hoaglin's conduct and character have any bearing on demand-futility analysis under Maryland law. (Defs.' Rep. at 7). The Court agrees.

Plaintiff fails to plead with particularity the reasons why the facts he alleges make Hoaglin unable to respond to a demand within the ambit of the business judgment rule. *See Werbowsky*, 766 A.2d at 144. Plaintiff does not allege that any matter from the SEC litigation remains unresolved. (Compl. P 58). Additionally, such allegations do not plead with particularity that Hoaglin ever acted outside of business judgment in the situation now before the Court, and therefore, the Court cannot find that demand is futile upon Hoaglin because he is plainly guilty of the wrongs alleged. *See Davis*, 17 A. at 264-265. Plaintiff's general allegations that [*26] Hoaglin has

breached his fiduciary duties are precluded by *Werbowsky*. 766 A.2d at 130 (stating that the demand-futility analysis is not decided on the merits of the case). [5] Thus, the Court finds that Plaintiff's allegations do not establish that Hoaglin is conflicted or committed for the purposes of Maryland's demand-futility analysis.

> 5   Moreover, Hoaglin's statement about the company's expectations in 2006 would probably not be considered a breach of his fiduciary duties under the business judgment rule. *See Werbowsky*, 766 A.2d at 144.

### 2. Defendant Kimble

Plaintiff has failed to plead with particularity why Kimble, who served as Huntington's Chief Financial Officer, Finance Director, Executive Vice President, and Controller, could not reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule. *See Werbowsky*, 766 A.2d at 144.

Plaintiff alleges that Kimble participated in the due diligence that lead to the acquisition of Sky Financial and that he attended meetings wherein "he unquestionably learned of the collapsing subprime market and risk exposure to Huntington." (Compl. P19). Plaintiff also claims that Kimble publicly made incorrect [*27] predictions about the success of the acquisition. (Compl. P 86). These allegations are precluded by *Werbowsky*. 766 A.2d at 130.

Thus, the Court finds that Plaintiff has not established that Kimble is conflicted or committed for the purposes of Maryland's demand-futility analysis.

### 3. Defendant Adams

Plaintiff has failed to plead with particularity why Adams, who served as Huntington's President, Chief Operating Officer, and a member of the Board until December 2007, could not reasonably have been expected to respond to a demand in good faith and within the ambit of the business judgment rule. *See Werbowsky*, 766 A.2d at 144. Plaintiff alleges that prior to the acquisition, Adams served as CEO and Chairman of the Board of Sky Financial and thus had "intimate knowledge of Sky Financial's relationship with Franklin." (Compl. P20). Furthermore, Plaintiff claims that "Adams had a material and financial interest in the completion of the Sky Financial acquisition because as part of the acquisition, Huntington entered into a "very lucrative" employment contract with Adams. *Id*.

Under *Werbowsky*, knowledge of the alleged

wrongdoings and employment within the company do not establish demand-futility. [*28] *766 A.2d at 130*. Thus, the Court finds that Plaintiff has failed to establish that Adams is conflicted or committed for the purposes of Maryland's demand-futility analysis.

**4. Members of the Company's Audit Committee**

Plaintiff has failed to plead with particularity why Defendants Lauer, Little, Mastroianni, and Porteous, in their positions as members of Huntington's Audit Committee, could not reasonably have been expected to respond to a demand in good faith and within the ambit of the business-judgment rule. *See Werbowsky, 766 A.2d at 144*.

Plaintiff alleges that these Defendants, as members of the Company's Audit Committee, knew that "the Company's auditors were brought in for special valuations of the Company's subprime securities since the Company could not adequately value or evaluate these high-risk securities." (Pl.'s Memo. in Opp. at 13-14). Plaintiff alleges that because of this knowledge, "the Audit Committee members caused or allowed the Company to issue false or misleading press releases regarding Huntington's financial statements, thus allowing the Company's value to be artificially inflated." *Id*. at 14.

These allegations do not establish that the Audit Committee members were [*29] unable to respond to a demand within the ambit of the business-judgment rule. *See Werbowsky, 766 A.2d at 144*. Furthermore, neither membership in a committee nor knowledge of alleged wrongdoings establishes demand futility. *Id. at 130*. Thus, the Court finds that Defendants Lauer, Little, Mastroianni, and Porteous, in their capacities as members of the Audit Committee, are not conflicted or committed for the purposes of Maryland's demand-futility analysis.

**5. Former Member of the Board of Sky Financial**

Plaintiff has failed to plead with particularity why Defendants Fennell, Hilliker, Levy, and Mastroianni, in their positions of former Sky Financial board members, could not reasonably have been expected to respond to a demand in good faith and within the ambit of the business judgment rule. *See Werbowsky, 766 A.2d at 144*.

Plaintiff alleges that at the time of the acquisition, the former Sky Financial board members were aware of the debt carried by Franklin and that these Defendants failed to provide Huntington shareholders with this information. (Pl.'s Memo. in Opp. at 14).

These allegations fail to plead with any particularity why these Defendants could not have considered a demand in good [*30] faith. *See Werbowsky, 766 A.2d at 144*. Moreover, the fact that a director has a preexisting relationship that might render him conflicted does not per se excuse demand. *Danielewicz, 769 A.2d at 291*. Thus, the Court finds that Defendants Fennell, Hilliker, Levy, and Mastroianni, in their capacities as former Sky Financial board members, are not conflicted or committed for the purposes of Maryland's demand-futility analysis.

**6. Members of the Company's Risk Committee**

Plaintiff has failed to plead with particularity why Defendants Biggs, Endres, Levy, Ransier, and Little, in their positions as members of the Company's Risk Committee, could not reasonably have been expected to respond to a demand in good faith and within the ambit of the business judgment rule. *See Werbowsky, 766 A.2d at 144*.

Plaintiff alleges that the Risk Committee members failed to properly realize the magnitude of Franklin's relationship with the Sky Financial deal. (Pl.'s Memo. in Opp. at 15). This allegation fails to plead with any particularity why these Defendants could not have considered a demand in good faith. *See Werbowsky, 766 A.2d at 144*. Thus, the Court finds that Defendants Biggs, Endres, Levy, Ransier, and [*31] Little, in their positions as members of the Company's Risk Committee, are not conflicted or committed for the purposes of Maryland's demand-futility analysis.

**7. Defendants who Received Substantial Compensation**

Plaintiff argues that because Defendants Endres, Ransier, and Biggs received substantial monetary compensation and other benefits from Huntington, they are conflicted or committed for the purposes of demand-futility analysis. (Pl.'s Mot. in Opp. at 16).

*Werbowsky* precludes arguments that Defendants who received substantial monetary compensation and other benefits from Huntington are conflicted or committed for purposes of Maryland's demand-futility analysis. *766 A.2d at 143* (stating that the Maryland Court of Appeals would not excuse demand because directors are paid well for their services). Thus, the Court finds that Defendants Endres, Ransier, and Biggs are not conflicted or committed simply because of the monetary compensation they receive from Huntington.

8

**8. Defendants Casto, Gerlach and Lhota**

Finally, Plaintiff has also failed to plead with particularity why Defendants Casto, Gerlach, and Lhota are unable to respond to a demand in good faith or within the ambit of the business-judgment [*32] rule. *See Werbowsky, 766 A.2d at 144*. Plaintiff alleges only that these board members belonged to various committees. (Compl. PP 25-27).

Mere membership on the Board or in a committee is insufficient to establish commitment or conflict of interest. *Id*. Thus, the Court finds that Defendants Casto, Gerlach, and Lhota are not conflicted or committed for the purposes of Maryland's demand-futility analysis.

In sum, because Plaintiff fails to establish that a single member of the Board is conflicted or committed for the purposes of establishing demand futility, the Court finds that Plaintiff has failed to satisfy the second prong of the demand-futility exception, requiring him to plead with particularity that a majority of the directors could not make a good-faith consideration of a demand. *See Werbowsky, 766 A.2d at 144*.

**III. CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff has failed to meet the pleading requirements of *Rule 23.1* as interpreted by courts applying Maryland law. Defendants' arguments for dismissal are therefore well-taken. The Court **DISMISSES** Plaintiff's case against Defendants. Final judgment shall be rendered in favor of Defendants, Thomas E. Hoaglin, *et.* [*33] *al.*, and against Plaintiff, Russell E. Caston.

The Clerk shall remove this case from the Court's pending cases list.

The Clerk shall remove Document 54 from the Court's pending motions list.

**IT IS SO ORDERED**.

**/s/ George C. Smith**

**GEORGE C. SMITH, JUDGE**

**UNITED STATES DISTRICT COURT**

9