**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE:  REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE, AND ERISA LITIGATION | ) ) ) ) | |
| REBECCA RYAN, | ) ) | |
| Plaintiff, | ) ) ) | Case Nos. MDL 2009 08-2162 |
| v. | ) ) ) | |
| MORGAN ASSET MANAGEMENT, INC., REGIONS MORGAN KEEGAN MULTI-SECTOR FUND, et al., | ) ) ) ) ) | |
| Defendants. | ) | |

---

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

---

Before the Court are the Motions to Dismiss filed by all Defendants on July 30 and August 19, 2009. (See Dkt. Nos. 38, 42, 45.) Defendants generally argue that Plaintiff Rebecca Ryan has failed to show that the Court should excuse her failure to make demand on the board of Nominal Defendant Regions Morgan Keegan Multi-Sector Fund[1] (the "Fund") before filing this derivative suit. (E.g., Memorandum in Support of Motion to Dismiss by Jack R. Blair, et al., at 6-8) ("Indiv. Defs.'

---

[1] The proper name for the Fund during the applicable time period was the Regions Morgan Keegan Multi-Sector High Income Fund.  Following a change in control on July 29, 2008, the Fund changed its name to the Helios Multi-Sector High Income Fund.

Memo"); see also Fed. R. Civ. P. 23.1.    Ryan responded in
Opposition on September 18, 2009.    Defendants later replied to
Plaintiff's response on October 19, 2009 (Dkt. Nos. 53-55),
which generated a sur-reply from Plaintiff on October 26, 2009.
(Dkt. No. 56.)    The Court rejected Plaintiff's attempt to
incorporate by reference an entire complaint from a related
case, Landers v. Morgan Asset Mgmt., Inc., No. 08-2260 (W.D.
Tenn.), via her sur-reply.    (See Order Granting in Part
Plaintiff's Motion for Leave to File a Sur-Reply, Dkt. No. 58,
at 2-3.)    The parties' arguments concluded with Defendants' sur-
sur reply, filed on December 15, 2009.    (See Dkt. No. 60.)
Because Ryan has failed to plead facts sufficient to excuse the
stringent demand requirement of Maryland law, the Court GRANTS
Defendants' Motion to Dismiss.    See Werbowsky v. Collomb, 766
A.2d 123, 143-44 (Md. 2001).

## I.    BACKGROUND

Ryan filed her derivative Complaint on behalf of the Fund
on March 13, 2008.    (Compl. at 1.)    She is a resident of the
state of Arkansas and a shareholder of the Fund.    (Id. ¶ 3.)
Named as Defendants are the Fund itself and Morgan Asset
Management, Inc., the Fund's investment manager, which is a
wholly-owned subsidiary of MK Holding, Inc.[2]    Ryan has also named

---

[2]    MK Holding is itself a wholly-owned subsidiary of Regions Financial
Corporation, the holding company that also owns Regions Bank and the
investment firm Morgan Keegan & Company.    (Compl. ¶¶ 4-5.)

each of the Fund's eight directors (the "Individual Defendants" or "Directors") as Defendants:  J. Kenneth Alderman, Jack R. Blair, Albert C. Johnson, James Stillman R. McFadden, Allen B. Morgan, Jr., W. Randall Pittman, Mary S. Stone, and Archie W. Willis.  (Id. ¶¶ 5-13.)

The Fund made its initial public offering to investors on January 23, 2006.  As a closed-end fund, the value of its investments combined with any premium placed on its shares by the market determines its share price.  (Id. ¶ 26.)  The Fund's initial offering price was $15.00 a share.  (Id.)  The Fund is a "High Yield" fund, designed to invest in a wide range of debt securities including "corporate bonds, mortgage-backed and asset-backed securities, convertible debt securities, and distressed securities."  (Id. ¶ 27.)  These distressed securities are more commonly known as "junk bonds" and are issued by companies with below-investment-grade credit ratings. To attract investors to purchase these more risky investments, the bonds pay a much higher yield to compensate for their higher likelihood of default.  (Id.); see Glenn Yago, The Concise Encyclopedia of Economics (2d ed.), available at http://www.econlib.org/library/Enc/JunkBonds.html (last visited Mar. 4, 2010).

A significant portion of the Fund's investment portfolio consisted of collateralized debt obligations ("CDOs").  CDOs are

asset-backed, structured credit products that are constructed from a portfolio of fixed-income assets. In the case of the Fund, these fixed-income assets were mortgages. (Compl. ¶ 28.) Investment professionals divide CDOs into different tranches before their sale based on their exposure to risk. From most to least senior, the ratings are AAA, AA to BB, and unrated tranches known as equity tranches. (Id.) When the value of the assets backing the CDOs declines because of default, the losses are distributed to the junior tranches first. CDOs do not trade in open-market exchanges, making it difficult to value them on a frequent basis. (Id. ¶¶ 28-29)

Ryan alleges that a large portion of the CDOs held by the Fund were highly volatile because the assets backing them were subprime mortgages, i.e., those mortgages issued to homebuyers with substandard credit. (Id. ¶ 28.) She also alleges that, when the subprime mortgage crisis began in the summer of 2007, the Fund continued to hide its exposure to this slumping area of the market to inflate its share price artificially. (Id. ¶ 30.) The Fund began to acknowledge its exposure in July 2007, admitting for the first time that it was having difficulty establishing a "fair value" for its assets because, as the subprime market began to plummet, fewer people were willing to purchase CDOs backed by riskier mortgages. (Id. ¶ 31.) On November 7, 2007, James Kelsoe, the Fund's portfolio manager,

wrote a letter to investors revealing the full extent of the Fund's exposure to subprime-mortgage-backed assets. The letter explained that the Fund had invested 11.4% of its portfolio in those assets. (<u>Id.</u> ¶ 32.) On November 8, 2007, the day after Kelso released his letter, the Fund's share price closed at $5.41, reflecting a 63% decline from its price on July 13, 2007. (<u>Id.</u> ¶ 33.)

The Complaint alleges that the dramatic decline in the Fund's share price demonstrates that the Fund lacked adequate investment controls and had invested too much of its portfolio in illiquid assets. (<u>Id.</u> ¶ 34.) Ryan asserts that the Fund's prospectus misstated the extent of the Fund's exposure to mortgage-backed assets, the proper value of those assets, and the extent to which the Fund had to value its assets by fair value, <u>i.e.</u>, appraisal, methods. (<u>Id.</u> ¶ 35.) According to Ryan, the Directors were aware of these misstatements, but did nothing to correct them, violating Generally Accepted Accounting Principles ("Principles"). (<u>Id.</u> ¶¶ 23-24, 35-36.) Specifically, Ryan alleges that the Defendants' actions caused the Fund to violate the Principles of materiality, completeness, conservatism in valuation, and disclosure of all contingencies when it is possible that a loss may have occurred. (<u>Id.</u> ¶¶ 42a-i.) These failures further caused the Fund to violate

provisions of Section 13 of the 1934 Securities and Exchange Act and Section 302 of the Sarbanes-Oxley Act.  (Id. ¶ 44-45.)

Ryan's derivative Complaint alleges that the Individual Defendants breached their fiduciary duties, grossly mismanaged the Fund, abused their right to control the Fund, wasted corporate assets, and unjustly enriched themselves at the shareholders' expense.  (Id. ¶¶ 64-69, 78-91.)  It also asserts that all Defendants violated Section 13 of the 1934 Securities and Exchange Act.  (Id. ¶¶ 70-77.)  Ryan seeks declaratory relief; an order requiring the Individual Defendants to disgorge all profits, benefits, and compensation obtained while serving on the Fund's board; reimbursement for damage to the Fund; and reasonable attorneys' and experts' fees.  (Id. at 27.) Defendants filed the present Motions to test the adequacy of Plaintiff's Complaint.

## II.   JURISDICTION AND STANDARD OF REVIEW

Plaintiff brings this action under the diversity jurisdiction conferred by 28 U.S.C. § 1332(a)(1).  Plaintiff is a citizen of the state of Arkansas.  (Compl. ¶ 3.)  Nominal Defendant Fund is a Maryland corporation whose principal place of business is in Memphis, Tennessee.[3]  (Id. ¶ 4.)  Defendant Morgan Asset Management, Inc. is an Alabama corporation whose

---

[3] Because the Fund is a Maryland corporation, Maryland law governs the issue of demand.  See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 101 (1991)

principal place of business is in Memphis, Tennessee. (<u>Id.</u> ¶ 5.)   None of the eight Individual Defendants is an Arkansas citizen, and the amount in controversy exceeds $75,000. (<u>Id.</u> ¶¶ 1, 5-13.)

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. <u>League of United Latin Am. Citizens v. Bredesen</u>, 500 F.3d 523, 527 (6th Cir. 2007).   A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 563 (2007).   This standard requires more than bare assertions of legal conclusions. <u>Bovee v. Coopers & Lybrand C.P.A.</u>, 272 F.3d 356, 361 (6th Cir. 2001).   "[A] formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555.   Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (<u>per curiam</u>).   "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555.)

Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  "This plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (citing Twombly, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 1949 (citation omitted).  A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery."  Id. at 1950.

When a plaintiff brings a derivative suit, Federal Rule of Civil Procedure 23.1 heightens these notice-pleading requirements.  See McCall v. Scott, 239 F.3d 808, 815 (6th Cir. 2001).  The complaint must "state with particularity" all efforts undertaken by the plaintiff to make demand on the board of directors or the reasons the plaintiff failed to make demand.  Fed. R. Civ. P. 23.1(b)(1)(3).  "Merely alleging futility will not suffice" under Rule 23.1.  Auletta v. Ortino (In re Ferro Corp. Derivative Litig.), 511 F.3d 611, 618 (6th Cir. 2008).  Rather "the plaintiff must point to facts which show that the presumed ability of the directors to make unbiased, independent business judgments about whether it would be in the

corporation's best interests to file the action does not exist in this case." Id. (quoting Davis v. DCB Fin. Corp., 259 F. Supp. 2d 664, 670 (S.D. Ohio 2003) (emphasis in original)). Where the complaint does not meet this heightened pleading standard, a court will dismiss it. See id. at 623.

### III. ANALYSIS

#### A. Plaintiff is not Required to Make Demand on the New Board

Before proceeding to the issue of whether the Court can excuse Plaintiff's failure to make demand on the Fund's board at the time she filed suit, the Court must address the argument of the Fund's current board that Plaintiff must make demand on it. The Nominal Defendant notes that, as of July 29, 2008, when control of the Fund changed, the shareholders elected an entirely new board. (Memorandum of Law in Support of Nominal Defendant's Motion to Dismiss at 1.) ("Nom. Defs.' Memo") Because none of the new board members was in office when the events in question allegedly occurred, the Fund asserts that the Court should stay the present action so that it may conduct an appropriate investigation or dismiss the suit. (Id. at 1-2.) The Fund's fellow Defendants join in this argument and point the Court to Delaware law because Maryland's courts have yet to give guidance on whether a plaintiff must make demand on a board elected after she filed suit. (Independent Directors' Reply

Brief in Support of Their Motion to Dismiss at 1-2.) ("Indiv. Defs.' Reply")

Defendants are correct that Maryland courts have not established if and when a plaintiff must make demand on a new board, elected after she commenced her suit. The Court, therefore, will examine the law of Delaware, a lodestar for corporate law, for guidance on this issue. Delaware law generally tests whether demand was appropriate at the time the plaintiff filed her original complaint. See Braddock v. Zimmerman, 906 A.2d 776, 785 (Del. 2006) ("[D]emand is excused only where particularized factual allegations create a reasonable doubt that, as of the time the complaint was filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." (emphasis added)). In Braddock, the Delaware Supreme Court held that a plaintiff does not have to make demand on a new board unless the plaintiff files an amended complaint after the new board has taken office and adds new claims unrelated to those already "validly in litigation." Id. at 786. In all other situations, a court examines whether demand was proper in the context of the board in office when the original complaint was filed. See id.

In the present suit, it is undisputed that Ryan has not amended her Complaint. Therefore, Plaintiff need not make

demand on the Fund's new board.   See id. at 778-89.
Acknowledging this likely result under Delaware law, Defendants
argue that, were it to address the issue, Maryland's highest
court would impose a higher standard on derivative plaintiffs
and require that they make demand on any new, independent board.
(Indiv. Defs.' Reply at 2.)

     A federal court must predict how a state's highest court
would interpret its law where no relevant case law exits.   FDIC
v. Jeff Miller Stables, 573 F.3d 289, 298 (6th Cir. 2009).   The
Court is reluctant to find that the Maryland Court of Appeals
would significantly diverge from the general rule that a court
looks to the time plaintiff filed her complaint to determine
whether demand was proper.   Maryland's highest court has not
been reluctant to announce its disagreement with corporate law
trends, particularly those that originate in Delaware.   See
Werbowsky, 766 A.2d at 144, 146 (establishing higher standard
than Delaware for finding demand futile).   Notably, however,
when reforming Maryland's demand law, the Maryland Court of
Appeals made no mention of any requirement that a plaintiff make
demand on a new board that takes office after she files suit.
See id. at 135, 146.   The Court does not interpret this silence
as an invitation to rewrite Maryland's demand requirement
further.   Were the Maryland Court of Appeals faced with the
issue, the Court finds that it would follow the lead of Delaware

and most other states and hold that a change in board composition does not automatically require a plaintiff in a pending suit to make demand on the new board.  Braddock, 906 A.2d at 786.  The Court, therefore, DECLINES to dismiss Ryan's suit based on her failure to make demand on the Fund's new board, which took office on July 29, 2008.

### B. Plaintiff Has Failed to Establish That Demand Was Futile

Defendants next argue that Ryan has failed to plead adequate facts to excuse her failure to make demand on the Fund's board at the time she filed suit.  (E.g., Indiv. Defs.' Memo at 6-8.)  Defendants further argue that Maryland statutory law provides that all directors who meet the requirements for disinterested directors under the Investment Company Act of 1940 are "deemed to be independent and disinterested when making any determination or taking any action as a director."  Md. Code Ann., Corps. & Ass'ns § 2-405.3; (see also Indiv. Defs.' Memo at 8-9.)  Ryan responds that she has pled facts adequate to survive a motion to dismiss and that the cited Maryland statute is inapplicable to derivative actions.  (Plaintiff's Sur-Reply Brief in Opposition at 3-5.)

### 1. The Maryland standard

A derivative suit, like the one Ryan brings, is a "suit to enforce a corporate cause of action against officers, directors,

and third parties." Ross v. Bernhard, 396 U.S. 531, 534 (1970)
(emphasis in original).   Its purpose is to allow individual
shareholders "to protect the interests of the corporation from
the misfeasance and malfeasance of faithless directors and
managers." Kamen, 500 U.S. at 95 (internal quotation marks and
citation omitted).   Derivative suits redress "'two distinct
wrongs:  (1) [t]he act whereby the corporation was caused to
suffer damage, and (2) the act of the corporation itself in
refusing to redress the said act.'" Scalisi v. Fund Asset
Mgmt., L.P., 380 F.3d 133, 138 n.7 (2d Cir. 2004) (quoting
Druckerman v. Harbord, 22 N.Y.S.2d 595, 597 (N.Y. Sup. Ct. 1940)
(alteration in original)).   Courts have fashioned the
requirement that plaintiffs seeking to bring derivative actions
first make demand on the corporation's board to protect the
right of the board to manage the company and prevent abuse of
the remedy by litigious shareholders. Kamen, 500 U.S. at 95-96.
Thus, the demand requirement provides corporate directors with
"an opportunity to exercise their reasonable business judgment
and waive a legal right vested in the corporation in the belief
that [the corporation's] best interests will be promoted by not
insisting on such right." Id. (internal quotation marks and
citations omitted).

Many states recognize an important check on the power of a
corporation to control all litigation:    the demand futility

exception.   Id.   at   101.   In   most   jurisdictions,   where   a corporation's board is deemed unable to exercise its independent business judgment because of a conflict, the law will waive the demand requirement and allow a derivative suit to proceed without the board's consent.   Id. at 102.   When the "directors' minds are closed to argument," the futility exception eliminates the board's normal power to veto lawsuits filed on the corporation's behalf.   In re Ferro Corp. Derivative Litig., 511 F.3d at 618 (internal quotation marks and citation omitted); see also Kamen, 500 U.S. at 101.   ("To the extent that a jurisdiction recognizes the futility exception to demand, the jurisdiction places a limit upon the directors' usual power to control the initiation of corporate litigation." (emphasis in original)).

State law determines the contours of both the demand requirement and the futility exception.   Kamen, 500 U.S. at 101. Because the Fund is a Maryland corporation, Maryland law will determine the substantive burden Ryan faces in proving that her failure to make demand on the board is excusable because any demand would have been futile.   Id.   Rule 23.1 governs the specificity with which Ryan must plead facts sufficient to meet Maryland's substantive standard.   See Fed. R. Civ. P. 23.1(b)(1)(3); In re Ferro Corp. Derivative Litig., 511 F.3d at 618.

In Werbowsky, the Maryland Court of Appeals reviewed the history of the demand requirement in corporate law in general and Maryland common law in particular. 766 A.2d at 135-142. The court observed that the demand requirement and the futility exception had a long history in Maryland case law, but that the modern trend "has been to enforce more strictly the requirement of pre-suit demand and at least to circumscribe, if not effectively eliminate, the futility exception." Id. at 137. After taking note of this trend and Delaware's more forgiving futility exception, the Maryland Court of Appeals determined that both went too far. Id. at 143. Compare Braddock, 906 A.2d at 785 (explaining that Delaware law usually excuses demand where there is a reasonable doubt that the directors are disinterested or that the challenged transaction was the product of a valid business judgment), with Cuker v. Mikalauskas, 692 A.2d 1042, 1048-49 (Pa. 1997) (adopting the American Law Institute's Principles, which require universal demand). Maryland retained "for the time being" the futility exception, but only as a "very limited exception" to a robust demand requirement. Werbowsky, 766 A.2d at 144.

Under Maryland law, a court is to excuse demand only:

> when the allegations or evidence clearly demonstrate,
> in a very particular manner, either that (1) a demand,
> or a delay in awaiting a response to a demand, would
> cause irreparable harm to the corporation, or (2) a
> majority of the directors are so personally and

> directly conflicted or committed to the decision in
> dispute that they cannot reasonably be expected to
> respond to a demand in good faith and within the ambit
> of the business judgment rule.

Id.  A reviewing court must focus its "attention on the real,
limited issue – the futility of a pre-suit demand" rather than
"preliminary proceeding issues that go more to the merits of the
complaint [such as] whether there was, in fact, self-dealing,
corporate waste, or a lack of business judgment with respect to
the decision . . . under attack." Id.  Simply put, "demand . .
. is important," and Maryland law will not easily excuse it.
Id. (emphasis in original); see also Washtenaw County Employees'
Ret. Sys. v. Wells Real Estate Inv. Trust, Inc., No. 1:07-CV-
862-CAP, 2008 U.S. Dist. LEXIS 53652, at *42-44 (N.D. Ga. Mar.
31, 2008) (collecting cases and observing that only one highly-
criticized case applying the Werbowsky standard has ever found
that demand was futile).  But see Felker v. Anderson, No. 04-
0372-CV-W-ODS, 2005 U.S. Dist. LEXIS 4236, at *7 (W.D. Mo. Feb.
11, 2005) (summarily concluding that plaintiff met Werbowsky
standard and demonstrated demand futility).

## 2.  Plaintiff fails to meet the Werbowsky test

Ryan's Complaint alleges that demand was futile because a
majority of the directors were conflicted.  (Compl. ¶ 50.); see
also Werbowsky, 766 A.2d at 144 (second prong of futility
exemption).  To support her contention she alleges that 1) each

16

of the directors participated in, ratified, or approved the dissemination of false and misleading statements to shareholders; 2) because the directors participated in the alleged wrongdoing, they would have "to sue themselves and persons with whom they have extensive business and personal entanglements"; 3) each member of the board receives extensive remuneration for his or her services as well as "other emoluments" that he or she would lose; 4) the Directors are beholden to the Fund and the Fund's parent companies and therefore would be hostile to the action; and 5) if the Directors had to sue fellow directors, their liability insurance policies would not cover any resulting judgment. (Compl. ¶¶ 51-62.) Defendants argue that Ryan's allegations fail to meet Maryland's high standard to waive demand. (E.g., Indiv. Defs.' Memo at 8.)

Werbowsky flatly rejected the notion that a plaintiff may excuse demand based on an allegation that directors "are well paid for their services." 766 A.2d at 143; cf. Scalisi, 380 F.3d at 136, 142 (applying Maryland law and finding that demand was not waived where each of a fund's nine directors sat on forty-nine boards and made between $160,000 and $260,000 annually). Nor are "generalized or speculative allegations that [directors] are conflicted or controlled by other conflicted persons" adequate to waive the demand requirement. Werbowsky,

766 A.2d at 143.   In a case applying Maryland law, the Supreme Court has recognized as unremarkable the fact that investment companies, such as the Fund, typically have the same entity underwrite and organize them.   Kamen, 500 U.S. at 93.   If a plaintiff could simply waive demand through an allegation that a fund's organizer also appointed the Board, the demand requirement would evaporate – a result directly opposed to the Maryland Court of Appeals' holding that futility is to be "a very limited exception."   Werbowsky, 766 A.2d at 144.

For similar reasons, the allegation that the Directors participated in, ratified, or approved some of the alleged wrongful conduct cannot excuse demand.   This, too, would make the demand requirement a chimera.   The Maryland Court of Appeals has explained that the demand requirement often "may be [the directors'] first knowledge that a decision or transaction they made or approved is being questioned."   Id.   Demand allows directors the opportunity "to consider, or reconsider, the issue in dispute."   Id.   On learning of an aggrieved shareholder's complaint, the board can investigate the allegations itself or appoint a special litigation committee.   Id.   Because "the futility exception [would] eliminate[] any chance at meaningful pre-litigation alternative dispute resolution," courts should not allow mere allegations of director wrongdoing to waive the demand requirement.   See id.; accord In re Franklin Mut. Funds

18

Fee Litig., 388 F. Supp. 2d 451, 470 (D.N.J. 2005) ("Mere approval of the challenged transactions . . . is not enough to excuse the failure to make a demand." (citing Werbowsky, 766 A.2d at 143-44)).

Finally, the allegation that Directors may have to sue themselves or their fellow board members and thereby void their liability insurance coverage is not enough to waive demand under Maryland law. Although the Maryland Court of Appeals has yet to address this issue directly, other courts applying Maryland law have found that lack of insurance coverage is not enough to waive demand under Werbowsky. See, e.g., In re InfoSonics Corp. Derivative Litig., No. 06cv1336 BTM(WMc), 2007 U.S. Dist. LEXIS 66043, at *20 n.1 (S.D. Cal. Sept. 4, 2007) (declining to find Werbowsky would waive demand because directors' insurance would not cover potential judgment); Sekuk Global Enters. Profit Sharing Plan v. Kevenides, Nos. 24-C-03-007496, 24-C-03-007876, 24-C-03-008010, 2004 Md. Cir. Ct. LEXIS 20, at *24 (Md. Cir. Ct. May 25, 2004) (predicting that the Maryland Court of Appeals would decline to adopt an "insured-versus-insured" argument for waiving demand). Courts routinely find that allegations that the directors might have to sue themselves or other directors do not waive demand. See In re InfoSonics Corp., 2007 U.S. Dist. LEXIS 66043, at *22 (noting that such a holding would "eviscerate the demand requirement" anytime a plaintiff alleged

19

that a director had committed wrongdoing); id. at *20 ("[A]ll well-pled complaints would be able to establish demand futility" under such a standard); cf. Werbowsky, 766 A.2d at 144 (noting that the demand requirement allows directors to reconsider their prior decisions). Indeed, when interpreting the less stringent futility requirements of Ohio law, the Sixth Circuit has declined to hold that the possibility of directors' having to sue themselves and lose their insurance coverage waives demand. In re Ferro Corp., 511 F.3d at 622; see also In re Ferro Corp., 511 F.3d at 622 (noting that the result would be the same under Delaware law (citing Orloff v. Schulman, No. 852-N, 2005 Del. Ch. LEXIS 184, at *50-51 (Del. Ch. Nov. 23, 2005))). None of the Complaint's allegations excuses Plaintiff's failure to make demand on the Fund's board.[4]

### IV.   CONCLUSION

Maryland law requires that Ryan make demand on the Fund's board before filing suit. See Werbowsky, 766 A.2d at 144. Because Ryan failed to make any demand, the Court GRANTS

---

[4] It is unnecessary to decide the effect, if any, Maryland Code Annotated, Corporations and Associations § 2-405.3 might have on directors' independence. There is a split of authority on the issue. Compare In re Mut. Funds Inv. Litig., 384 F. Supp. 2d 873, 879 (D. Md. 2005) (finding that there is "no question" that the statutory presumption applies in the context of demand futility), with Scalisi, 380 F.3d at 139 n.11 (finding that the statute does not apply because it "is not directed specifically to derivative actions," which in Maryland are solely creatures of common, rather than statutory, law), and Werbowsky, 766 A.2d at 145-146 (resolving demand issue without mentioning § 2-405.3). Even absent a presumption of independence, Plaintiff's Complaint fails to plead facts sufficient to waive demand on the board.

Defendants' Motions and DISMISSES Plaintiff's suit WITHOUT PREJUDICE to the Fund's right to seek remuneration for any perceived wrongs on the completion of its board's investigation.

So ordered this 10th day of March, 2010.


                              s/ Samuel H. Mays, Jr.
                              SAMUEL H. MAYS, JR.
                              UNITED STATES DISTRICT JUDGE